BENJAMIN F. NELSON and others *vs.* NILS JOHNSON.

March 5, 1888.

Sale of Business—Covenant not to Engage in Same Business—Construction—Breach.—The defendant, upon selling out his business and stock in trade, agreed with the plaintiffs, upon sufficient consideration, not to engage in the same business at the same place again, either directly or indirectly, for five years, and stipulated large damages in case of a breach of the contract.   *Held*, that such a contract is not to be extended, by construction, beyond the fair and natural import of the language used; and in this instance did not extend to isolated acts or occasional services in good faith rendered for the accommodation of another dealer by defend-

ant, nor to employment in some subordinate capacity not affecting the management of the business, or influencing custom; but did prohibit him from engaging in business with another, or in his name or for him, in any such capacity (whether foreman, salesman, or manager) as would result in the mischief which it was the plain purpose of this agreement to prevent.

Same—Question for Jury.—*Held*, upon the evidence in this case, that it was for the jury to determine whether the defendant had so engaged his services to a rival dealer, or there had been any fraudulent evasion of the contract by him.

This action was brought in the district court for Hennepin county, and removed for trial to Sibley county, where it was tried before *Edson*, J., and a jury, who found for defendant. The plaintiffs appeal from an order refusing a new trial.

*Ueland, Shores & Holt*, for appellants.

*Kipp & Preble*, for respondent.

VANDERBURGH, J. This action is brought to recover damages for the alleged breach by defendant of the following contract, entered into between the parties:

"MINNEAPOLIS, MINN., February 27, 1886.

"In consideration of Nelson, Tenney & Co., of Minneapolis, having purchased my stock of lumber, lath, shingles, sash, doors, etc., at Winthrop, Minn., and paid me a bonus of five hundred dollars ($500) for the good-will of the business, I do hereby agree to and with said Nelson, Tenney & Co. that I will not engage in the lumber business, directly or indirectly, at said Winthrop, nor at the towns of Gaylord or Gibbon, Minnesota. Should I at any time within a period of five years violate my agreement above mentioned, by engaging in the lumber business, either directly or indirectly, I agree to pay to the said Nelson, Tenney & Co. a penal sum of two thousand dollars, ($2,000.)

"N. JOHNSON."

The defendant's trade extended for a distance of ten miles from Winthrop, and the villages of Gibbon and Gaylord are within that distance. The contract was therefore reasonable, and not unlawfully in restraint of trade, and was valid and binding on the defendant. The only questions to be considered are (1) whether the uncontroverted evidence is

sufficient to establish a breach of the contract; and, (2) if there was a case for the jury, whether the court erred in refusing to submit certain legal propositions to the jury.

The defendant sold out his stock and business to the plaintiffs, and agreed not to engage in it again for five years at the places designated, either directly or indirectly, and large damages are stipulated in case of breach of the agreement. The contract is not to be extended, by construction, beyond the fair and natural import of the language used, but full effect must be given to the intent of the parties as thereby expressed. The action is for the stipulated damages for the alleged violation of defendant's express covenant or agreement not to engage in the business, directly or indirectly. From the circumstances of his giving up and selling out his business entirely, including the good-will thereof, we should naturally infer that the parties meant, by the terms used, that the defendant was to keep out of it, and was not to enter it again, either alone or with another, or in his name or for him, in any such capacity (whether salesman, foreman, or managing agent) as would naturally result in working the mischief which it was the plain purpose of the contract to prevent. The words "directly or indirectly" emphasize the agreement, and permit no evasion of its purpose and object. To engage his services to or in assisting a rival dealer in the same business, to solicit and make sales, and to influence buyers in that market, including his old customers, would, we think, be fairly within the terms of the contract. But it refers to *engaging* in business; it does not extend merely to isolated acts which might tend to interfere with the plaintiffs' business, or to occasional services voluntarily rendered for the convenience or accommodation of another in good faith. Nor do we think it would include subordinate employment, not affecting the management or control of the business, or directly influencing custom.

In *Whitney* v. *Slayton,* 40 Me. 224, a covenant not to engage in the business of iron-casting within certain limits was held broken by the obligor's becoming a stockholder in a corporation carrying on that business, or being employed by such corporation in conducting it. In *Finger* v. *Hahn,* 42 N. J. Eq. 606, (8 Atl. Rep. 654,) the defendant sold out his butcher business, and agreed "not to carry on the

business on his own account, or to operate any butcher business." The evidence showed that he was operating a department of the butcher business in a grocery store kept by another, and for the latter, and that he did the buying and selling, as well as cut the meats; and the contract was held broken. In *Newling* v. *Dobell*, 19 Law T. (N. S.) 408, where the defendant, in selling out, agreed not to carry on or be concerned in or interested in the business of a tailor, held that the contract was broken by working as a journeyman for another. The covenant clearly embraced the exercise of his trade or skill as employe, as well as for himself. So, in *Hill* v. *Hill*, 55 Law T. (N. S.) 769, the covenant was "not to engage in, or be in any way concerned or interested in, the same business," and the defendant was not permitted to engage as employe on a salary. In *Vincent* v. *King*, 13 How. Pr. 234, the seller covenanted "not to exercise, carry on, or in any way pursue his trade in the village;" and in *Ewing* v. *Johnson*, 34 How. Pr. 202, the seller covenanted "not to in any manner interfere with the prosecution of the business of the purchaser." So, in *Boutelle* v. *Smith*, 116 Mass. 111, the covenant was "not to directly or indirectly engage in any business, or to do any act, that shall interfere with the business purchased." But it seems that the use of the words "be concerned in," or "interested in," "do any act," etc., in addition to the terms "carry on" or "engage in," showed that the parties intended to extend the contract further than the latter terms alone would do. The cases of *Grimm* v. *Warner*, 45 Iowa, 106; *Allen* v. *Taylor*, 39 Law J. Ch. 627; and *Clark* v. *Watkins*, 9 Jur. (N. S.) 142,—cited by respondent,—substantially support his contention, and hold that a contract "not to engage in or carry on" the same business does not include employment in the same business for another unless the contract expressly so stipulates. But the court must consider the nature of the business which the party abandons, and agrees not to undertake, "directly or indirectly," and the natural and reasonable effect of the new employment upon it, in determining whether the contract has been violated directly or indirectly; for if there has been an indirect violation or fraudulent evasion of it, resulting in damage, it could hardly be material that he was receiving wages instead of profits.

We think the court was right in holding that there was evidence in the case tending to show that the contract had been violated by the defendant; and that, upon the evidence, the question was for the jury, under proper instruction by the court. That is to say, the court was to construe the contract, and inform them what would constitute a breach of it, and the jury were to find whether the conduct of the defendant was such as to bring the case within the rule as given them. The evidence is not clear as to the nature of defendant's relations to Anderson's business. They both swear that he had no interest in the lumber business of the latter, though they were in partnership in the wood and post business. The defendant occupied the same office; was a justice of the peace; made collections for Anderson; assisted him about his books, and in various ways as wanted; and in some instances made sales, loaded lumber, and figured bills for customers. From all the facts and circumstances, the jury were to determine the nature and extent of his employment, and the question of his good faith. The court was right, therefore, in refusing to give the plaintiffs' several requests to charge, separately made, to the effect that if the defendant was engaged as an employe in selling lumber for Anderson, or if he made sales of lumber at Winthrop, whether the lumber was his own or not, or if the defendant solicited buyers to purchase lumber of persons other than the plaintiffs, they were entitled to recover. The first makes no distinction in the capacity in which he was employed, and the character of the employment, whether casual and temporary or otherwise; and the second and third would apply as well to a few isolated cases as to a regular business. And the exceptions to the general charge are not such as to raise any question for this court.

Order affirmed.