NATIONAL BENEFIT COMPANY *vs.* UNION HOSPITAL COMPANY.

January 20, 1891.

**Restraint of Trade—Contract between Mutual-Benefit Companies for Division of Territory and Business.**—These two companies were engaged in the business of issuing "benefit certificates," entitling the holders, in case of sickness or injury, to maintenance, care, and medical treatment in any hospital provided by the company. The plaintiff had established a lucrative business of this kind in the states, among others, of Minnesota, Wisconsin, and the northern peninsula of Michigan, and had acquired valuable contracts with hospitals in that territory, entitling the holder of its certificates to treatment in such hospitals. The two companies entered into a contract by the terms of which the plaintiff agreed to refrain for the term of three years from selling certificates in the territory named, except to railroad employes, and to turn over, as far as in its power, to the defendant its hospital contracts, in consideration of which

the defendant agreed to pay plaintiff a certain sum of money, and also to refrain, for a like period of three years, from selling certificates to railroad employes within the territory referred to.  *Held*, that the contract was not void as being in restraint of trade.

**Same—Sale of Business—Agreement by Seller not to Carry on Same Business—General Rule as to Validity.**—A person may legally buy the business of another coupled with an undertaking on part of the seller not to carry on the same business in the same place, or within the same territory.   The question of the reasonableness of the restraint of trade in such cases depends upon whether it is such only as to afford a fair protection to the party in whose favor it is made.

**Same—Case Distinguished from Combination between Producers, etc.**—The case distinguished from a combination between producers to limit the production of an article, so as to acquire a monopoly, and then enhance prices, and cases where a *quasi* public corporation enters into a contract restrictive of its business which would disable it from performing its duty to the public.

Action brought in the district court for Hennepin county, to recover $2,992.75, being part of the money agreed to be paid to plaintiff by defendant by the contract considered in the opinion.   A demurrer to the complaint was overruled by *Young*, J., and the defendant appealed.

*Clapp & Macartney*, for appellant.

*Keith, Evans, Thompson & Fairchild*, for respondent.

MITCHELL, J.[1]   This appeal is from an order overruling a demurrer to the complaint, and the sole question is whether it appears that the contract declared on is void on grounds of public policy as being in restraint of trade.   The plaintiff, an Illinois corporation, and the defendant, a Wisconsin corporation, were each organized for and engaged in the same business, to wit, "issuing and selling, to such persons as might desire to purchase the same, certificates entitling the holders thereof, when sick or injured, to maintenance and to medical and surgical care, attention, and treatment in any hospital provided by said corporation, and to such support during the time said holder might be confined in such hospitals; and to provide hospitals, infirmaries, and such other places as might be necessary for the reception of the holders of the certificates issued by it, without cost other than

[1] Vanderburgh, J., took no part in this case.

the cost of such certificates." The plaintiff was carrying on this business in a large number of the states of the Union, and had established a large and lucrative business of the character described in the states of Minnesota and Wisconsin and in the northern peninsula of Michigan, and had acquired many valuable contracts with hospitals throughout that territory, entitling the holders of its certificates to treatment in said hospitals. Thereupon the parties entered into the contract sued on, the principal features of which were: (1) That the plaintiff company agreed to refrain for the term of three years from selling certificates in the states of Minnesota, Wisconsin, and the northern peninsula of Michigan, except to railroad employes. (2) The plaintiff also agreed, by every proper means in its power, to secure to the defendant participation in all contracts and arrangements which it already had within that territory with hospitals; and whenever by such contracts it had the exclusive right to hospital service, so far as any company doing the same business was concerned, it would not consent to the substitution of parties other than defendant. (3) In consideration of these agreements on part of the plaintiff, the defendant agreed to pay to it certain sums of money, and also to refrain, during said term of three years, from selling certificates to the employes of any railway corporation doing business with n the territory mentioned. The business carried on by these two companies was open to be engaged in within this territory by any other person or corporation organized for that purpose.

Shortly stated, the legal effect of this contract was a sale by plaintiff, for a valuable consideration, to defendant, of its business and good-will within the territory mentioned, (except the right to sell certificates to railroad employes,) with a stipulation that it would refrain from engaging in such business within that territory for three years, and a like stipulation on part of defendant not to engage in the department of the business reserved by plaintiff. It will be observed that the restriction is not general, but limited both as to space and time, and is only co-extensive in space with the business transferred. Also, that the contract does not require either company to wholly refrain from engaging in the business for which it was organized, each remaining free to engage in it without restriction any-

where except within the designated territory; and, even in that, each may still pursue a certain department of such business. Moreover, both companies are purely private corporations, organized for purposes of private gain, and hence not charged with any public duty. Neither one nor both of these companies have any exclusive right to engage in this business, it being one open to all. Hence this contract does not, and cannot, create any monopoly. The most that can be claimed against it is that it reduces by one the number of competitors. Nor can it tend to exclude any one from hospital treatment, its only effect being to reduce by one the number of companies from whom persons desiring to secure in this form the right to hospital treatment could purchase these "benefit certificates."

We feel safe in asserting that no modern decision can be found holding any such contract, under a similar state of facts, void because in restraint of trade. Formerly in England the courts frowned with great severity upon every contract of this kind. The reasons for this partly grew out of the English law of apprenticeship, by which, in its original severity, no person could exercise any regular trade or handicraft except after having served a long apprenticeship. Hence, if a person was prevented from pursuing his particular trade, he was practically deprived of all means of earning a livelihood, and the state was deprived of his services. No such reason now obtains in this country, where every citizen is at liberty to change his occupation at will. Moreover, as cheaper and more rapid facilities for travel and transportation gradually changed the manner of doing business, so as to enable parties to conduct it over a vastly greater territory than formerly, the courts were necessarily compelled to readjust the test or standard of the reasonableness of restrictions as to place. And again, modern investigations have much modified the views of courts as well as political economists as to the effect of contracts tending to reduce the number of competitors in any particular line of business. Excessive competition is not now accepted as necessarily conducive to the public good. The fact is that the early common-law doctrine in regard to contracts in restraint of trade largely grew out of a state of society and of business which has ceased to exist,

and hence the doctrine has been much modified, as will be seen by comparison of the early English cases with modern decisions,—both English and American. A contract may be illegal on grounds of public policy because in restraint of trade, but it is of paramount public policy not lightly to interfere with freedom of contract. It is unnecessary at this time to go over ground so often travelled by others, and enter into any extended consideration of the decisions on this branch of the law. The principal cases on the subject, from the Year Books down, will be found collated in 2 Parsons on Contracts, 748, and also in the notes to *Mitchel* v. *Reynolds*, 1 Smith, Lead. Cas. (9th Ed.) 694. See, also, *Alger* v. *Thacher*, 19 Pick. 51; *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473, (13 N. E. Rep. 419;) *Beal* v. *Chase*, 31 Mich. 490; and *Oregon Steam Nav. Co.* v. *Winsor*, 20 Wall. 64.

The general *consensus* of all the authorities, at least the later ones, is that there is no hard and fast rule as to what contracts are void as being in restraint of trade, but each case must be judged according to its own facts and circumstances; that a party may legally purchase the business and trade of another for the very purpose of removing or preventing competition, coupled with an undertaking on the part of the seller not to carry on the same business in the same place or within the same territory; and the question of the reasonableness of the restraint of trade depends upon whether it is such only as to afford a fair protection to the party in whose favor it is made; and the limits of restraint as to space depend upon the kind of trade or business which is the subject of the contract. Tested by these rules we find nothing legally objectionable in the contract under consideration. In addition to cases cited above, see, also, *Moore Hardware Co.* v. *Towers Hardware Co.*, 87 Ala. 206, (6 South. Rep. 41.) There are two classes of cases, some of which appellant has cited, which are often confounded with, but are clearly distinguishable from, cases like the present, and stand upon an entirely different footing. The one is combinations between producers or dealers to limit the production or supply of an article, so as to acquire a monopoly of it and then unreasonably enhance prices. The other is where a corporation of a *quasi* public character, charged with a public duty, as

a railway company, gas company, or the like, enters into a contract restrictive of its business which would disable it from performing its duty to the public. Neither of these elements enters into this case.

Order affirmed.