# STANDARD OIL COMPANY v. DELVIN BERTELSEN.[1]

July 8, 1932.

No. 28,839.

*Orr, Stark, Kidder & Freeman,* for appellant.
*L. J. Lauerman,* for respondent.

OLSEN, J.

Plaintiff appeals from the judgment.

The action is one to enjoin the defendant from directly or indirectly selling or soliciting orders for the sale of gasolene, kerosene, motor fuels, oils, and greases, furnished by others than plaintiff,

[1]Reported in 243 N. W. 701.

in the village of Buffalo Lake in this state, and within the surrounding territory, for the period of one year from March 25, 1930, and, during said period and within said territory, from directly or indirectly soliciting, diverting, or taking away any of plaintiff's customers. The court after trial denied plaintiff any relief.

The granting of an injunction, whether temporary or permanent, except where otherwise provided by statute, rests in the sound discretion of the trial court, under the circumstances and facts of the particular case. 32 C. J. p. 29, § 11. But if after trial the facts found or conclusively established clearly show plaintiff entitled to relief by injunction, the court must grant such relief. In other words, the court's discretion is not arbitrary or unlimited. Currie v. Silvernale, 142 Minn. 254, 171 N. W. 782.

The situation and circumstances of the parties as shown by the evidence may be very briefly outlined. We do not attempt to make a complete statement of facts. Plaintiff is engaged in the business of distributing and selling gasolene, oils, and other petroleum products in this state. For the purpose of distributing and selling its products to its own and other filling stations and to stores, farmers, and other users, it owns and operates in numerous cities and villages so-called bulk stations. At these bulk stations it ships in, in tank cars and other cars, and stores in local tanks and warehouses, its gasolene and petroleum products. From these bulk stations it distributes and sells these products in bulk or at wholesale to its own and other filling stations, and to stores, farmers, and other users in the surrounding territory. It employs an agent or employe to operate each bulk station. It provides the agent with one or more tanks for use on trucks, the truck chassis being furnished by the agent; and with that equipment the agent takes its products from the railway cars as shipped in, places them in the local tank and warehouse, and hauls them out from there to the filling stations, farmers, and users to whom they are sold.

Defendant at the time of the trial was a man about 32 years of age. He had a common school education but no special training for any definite line of work. He had worked on farms and for a few years had operated a dray. He was a widower with two

young children, and he and the children resided with his parents on a farm about a mile outside the village of Buffalo Lake. He had little or no property and depended on his earnings for the support of himself and his children.

The village of Buffalo Lake is a small town of about 500 inhabitants, located in a farming community.

Defendant was employed by plaintiff to operate its bulk station at Buffalo Lake in May, 1927, and continued in such employment until March 25, 1930, at which time he resigned. What the form or terms of his contract of employment were prior to January, 1930, is not clearly shown. His compensation appears to have been on a commission basis, with a small monthly salary part of the time. In January, 1930, the plaintiff asked him to sign the written contract, prepared and presented by plaintiff, upon which this action is based. Defendant signed it. Summarized, this contract provides that the agent shall devote his entire time and attention exclusively to his said employment, and shall be strictly responsible for all products furnished to him by plaintiff, except where furnished to customers to whom plaintiff has in writing authorized credit to be extended. He is made responsible for loss or damage to products furnished him while in his possession or in the possession of his employes. He may employ assistants only with the consent and approval of plaintiff and is responsible for their acts. Either party may terminate the agreement by giving ten days' written notice, and plaintiff may terminate same for cause without notice. As consideration for his services the defendant is to receive certain specified percentage commissions on different products delivered by him to customers and a certain percentage hauling rate on part of them.

The vital provision in issue here is that the agent agrees that he will not, within one year from the termination of his employment, directly or indirectly sell or solicit orders for the sale of gasolene or petroleum products furnished by others than plaintiff within the territory in which he sold such products while in plaintiff's employ, or directly or indirectly solicit, divert, or take away any of the custom, business, or patronage of plaintiff within said territory.

■ The defendant, on quitting plaintiff's employ, obtained employment with the Buffalo Lake Oil Company, a competitor of plaintiff, located at said village of Buffalo Lake. He was employed by that company in the same capacity, as far as selling and distributing petroleum products are concerned, as while in plaintiff's employ, but with a somewhat wider territory. He admits that in his new employment he solicited orders from and sold petroleum products to some of plaintiff's former customers on a few occasions. Plaintiff claims it lost some customers and business in the rural district around the village after defendant quit its employ. The evidence as to what caused this loss is indefinite and unsatisfactory, perhaps necessarily so. The evidence as to defendant's direct diversion of any business is limited to three or four farmers who occasionally purchased gas or oil from defendant after he quit plaintiff's employ. That such purchases caused any substantial loss to plaintiff can hardly be assumed. Conceding that plaintiff's rural business decreased in 1930, it may as well be accounted for by the fact that competition was increasing. Plaintiff had two regular competitors in the business prior to 1930. In addition thereto, in the fall of 1929, a White Eagle filling station was established in the village and commenced competition by truck delivery in the rural territory. A coöperative company at Hector, near by, commenced to operate in the territory, and a station at Stewart did likewise. Competition greatly increased. The evidence is not such as to require the trial court to find that defendant caused any material or substantial loss to plaintiff.

There is no question of any trade or business secrets being involved. Defendant was not a professional man or a man skilled in a particular trade or business. He was an ordinary workman, and his place was readily filled by another employe. He did not acquire or occupy any confidential or close relation with plaintiff's customers. The contract contains strict and numerous covenants to be kept and performed by defendant; none to be performed by plaintiff, except its agreement to allow the stated commission on deliveries paid for or authorized by plaintiff. It contains no agree-

ment by plaintiff to supply the necessary products, and defendant may be discharged at any time on ten days' notice.

2. The defendant resided with his children in the community of Buffalo Lake. He had lived there for some 17 years, was known and had his friends and relatives there. To require him either to change his occupation, which he had followed for some three years, or to remove to a different community, was a harsh burden on him. A man's right to labor in any occupation in which he is fit to engage is a valuable right, which should not be taken from him or limited by injunction except in a clear case showing the justice and necessity therefor. Sternberg v. O'Brien, 48 N. J. Eq. 370, 22 A. 348; Oak Cliff I. D. Co. v. Peterson (Tex. Civ. App.) 300 S. W. 107; Byers v. Trans-Pecos Abstract Co. (Tex. Civ. App.) 18 S. W. (2d) 1096; Iron City Laundry Co. v. Leyton, 55 Pa. Sup. Ct. 93; Gilbert v. Wilmer, 102 Misc. 388, 168 N. Y. S. 1043; Burney v. Ryle & Co. 91 Ga. 701, 17 S. E. 986; Clark P. & M. Co. v. Stenacher, 236 N. Y. 312, 140 N. E. 708, 29 A. L. R. 1325.

The present case comes well within the reasoning and holding in Menter Co. v. Brock, 147 Minn. 407, 180 N. W. 553, 20 A. L. R. 857.

We have not overlooked such cases as Granger v. Craven, 159 Minn. 296, 199 N. W. 10, 52 A. L. R. 1356, and Peoples C. & D. Co. Inc. v. Share, 168 Minn. 474, 210 N. W. 397. The facts in those cases are different, and in those cases the trial court had granted an injunction and this court affirmed the trial court. Here we are asked to reverse the holding of the trial court refusing to grant an injunction. If upon the facts the trial court could reasonably have found either way, we are not at liberty to interfere.

■ We hold that the evidence sufficiently sustains the findings and conclusions of the trial court and that the decision was well within the sound discretion of the court. The conclusions of law are sustained by the facts found.

We do not find in the assignments of error anything requiring further discussion.

Judgment affirmed.

488

STONE, J. (concurring in result):

I concur in the result because this action is one for the specific performance, in part, of a continuing contract which either party could terminate at will on ten days' notice. Equity will not decree specific performance of such a contract. Reichert v. Pure Oil Co. 164 Minn. 252, 204 N. W. 882.