# WILLIAM BENNETT v. STORZ BROADCASTING COMPANY.

134 N. W. (2d) 892.

April 2, 1965—No. 39,538.

*Rice & Efron, Stanley Efron,* and *Patrick Murray,* for appellant.
*Robins, Davis & Lyons* and *Sidney S. Feinberg,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment entered pursuant to an order granting summary judgment to defendant in an action brought for tortious interference with an employment agreement.

From the record it appears that on January 5, 1960, plaintiff, William Bennett, a radio announcer, entered into a contract with defendant, Storz Broadcasting Company, which operates radio station WDGY, to work as a radio announcer for a salary of $1,083.33 per

month, payable semi-monthly. The contract was for a period of one year with two separate options permitting the company to extend the term for one-year periods at a stated increase in monthly salary. The contract included the following restrictive agreement:

"The Artist further agrees and covenants that upon termination of his employment with the Company for any reason, he shall not directly or indirectly, for a period of 18 months from the date that Artist should cease to be employed by the Company accept employment from, or appear on, or become financially interested in, any radio or television station whose station, offices or antenna is located within a radius of 35 miles of any city in which the Company owns or operates, or has entered into an agreement to purchase or operate a broadcasting station."

At the end of the first year plaintiff was notified that his contract would not be renewed, but that, if he wished, he could remain on as an employee at union wages which would amount to a reduction of his salary by one-half. Plaintiff resigned on January 17, 1961, and thereafter entered into contract negotiations with KSTP, another broadcasting station located within a 35-mile radius of defendant's Minneapolis station. This fact came to the attention of defendant, and on February 1, 1961, it wrote the management of KSTP as follows:

"We [attorneys for defendant] are authorized to advise you that if there is any violation of the contract referred to on the part of Mr. Bennett that we will be instructed to institute appropriate legal proceedings."

KSTP thereupon withdrew from further negotiations with plaintiff. Plaintiff contends that by the letter defendant intentionally and wrongfully conspired with its attorneys for the purpose of inducing KSTP not to carry out its declared intention to hire him and that he was thereby deprived of prospective employment to his damage in the sum of $25,000.

Plaintiff subsequently secured employment as an announcer with radio station WLOL, which is also located within a 35-mile radius of defendant's station. About the same time this action for wrongful

interference was started by plaintiff, defendant sued to enjoin plaintiff from working for WLOL. Plaintiff prevailed in that action. The findings of the court therein, which are a part of the record in this case, recite:

"That Storz Broadcasting Co., a corporation (hereinafter called plaintiff), is a corporation duly organized and existing under the laws of the State of Nebraska. That plaintiff is authorized to do business in this state and owns and operates radio station WDGY in the City of Minneapolis, Minnesota. That plaintiff also operates some five other broadcasting stations located in Kansas City, Missouri; St. Louis, Missouri; Oklahoma City, Oklahoma; New Orleans, Louisiana; and Miami, Florida.

"That William Bennett (hereinafter called defendant), a thirty-seven year old married man with a dependent mother, has been a radio announcer and disk jockey with various radio broadcasting stations throughout the United States for about eleven years. That previously to defendant's last employment with plaintiff, the subject of this lawsuit, he was employed by plaintiff at WTIX, New Orleans, La., and WDGY, Minneapolis, Minn., under a three year contract terminating in January of 1959.

"That in December of 1959 defendant's radio announcing position with KFRC, San Francisco, California, terminated. That on about January 1, 1960, plaintiff's then WDGY manager, C. B. Clarke, Jr., telephonically communicated with defendant in San Francisco offering him a job with WDGY. That shortly thereafter Mr. Todd Storz, president of plaintiff, phoned defendant welcoming him back and, among other things, informed him that he left the matter of salary to his station manager. That Mr. Clarke again phoned defendant informing the latter that he and his wife were flying out to California with the contract. That on January 5, 1960, Mr. Clarke presented to defendant in San Francisco, California, several duplicate copies of the contract agreement in question. That defendant signed each of the copies in the presence of Mr. Clarke who in turn signed as a witness to defendant's signature. That Mr. Clarke took possession of all copies for appropriate execution by plaintiff. That thereafter one such copy signed

by Mr. Todd Storz as president of plaintiff was delivered to defendant, the exact time and place undisclosed by the evidence.

"That on January 18, 1960, defendant commenced work in Minneapolis for plaintiff under said contract. That on about January 1, 1961, the then new station manager of WDGY, Edward M. Morgan, informed defendant he was being removed from his day-time schedule to the all night schedule. That shortly thereafter said manager of plaintiff informed defendant his contract would not be renewed for another year but as an alternative he could remain on at union wages, thereby in effect reducing his salary under the terms of said contract by one-half. That said alternative offer being unsatisfactory to defendant, he left the plaintiff's employment on January 17, 1961. That on about February 27, 1961, defendant secured employment as a radio announcer and disk jockey with the Minneapolis, Minn., radio station WLOL whose facilities are located within a radius of 35 miles of the City of Minneapolis.

"That paragraph 3 of the contract provides employment of defendant by plaintiff for a term of one year commencing January 18, 1960, reserving to plaintiff two separate options to extend the term of defendant's employment under the same terms and conditions for succeeding like periods of one year but at an increased amount of compensation. That paragraph 7 of said contract contained a restrictive covenant providing that defendant shall not for a period of 18 months from the cessation of his employment with plaintiff accept employment from or appear on or become financially interested in any radio or television station located within 35 miles of any city in which plaintiff operates a broadcasting station.

"That defendant is considered in the radio broadcasting industry and among those dealing in services of radio advertising to be an above-average radio announcer and disk jockey, but the evidence does not reflect that his abilities are unique, unusual, extraordinary, or of great value.

"That whatever abilities and capacities defendant possessed during the period of the contract here involved were not developed during his employment with plaintiff nor did the plaintiff expend substantial sums

of money to advertise or to develop or to feature defendant or his program. That on the contrary and as early as June and July of 1960 the format of defendant's customary program was materially changed, thereby limiting and changing defendant's so-called 'radio personality' for which he was best known. That near the expiration of the contract plaintiff relegated defendant to an inferior position, that of taping an all-night program which did not carry advertising.

"That the treatment of defendant by plaintiff as set out * * * above conclusively indicates that plaintiff at no time during the operation of the contract, except perhaps at its inception, considered defendant as anything more than an ordinary, if not less than ordinary, 'radio personality.'

"That the evidence is barren as to defendant's possession of any trade secrets, business secrets, or confidential information. That the evidence is insufficient to show that because of defendant, plaintiff has secured, retained, lost or will probably lose customers, or that defendant has caused or will cause any loss whatsoever to the plaintiff. That the evidence does not show that unless an injunction is granted as requested plaintiff will suffer irreparable injury. That conversely the evidence does show that the granting of the injunctive relief requested would operate harshly on defendant with nominal, if any, benefit to plaintiff. That the evidence does not make it appear necessary that injunctive relief should be granted for any fair protection of plaintiff's business."

After the determination of the action instituted by defendant for injunctive relief, both parties moved for summary judgment in this case. The record before the trial court consisted of the pleadings, affidavits of plaintiff and the attorneys for the parties, and the findings and order for judgment in the prior action. The trial court granted summary judgment for defendant, stating that the restrictive covenant contained in the contract represented an interest which justified the writing of the letter which is the basis of this action. The trial court was not influenced by the result in the injunctive proceedings. It was his view that the court in that action did not find that the written contract was void but that the defendant had not satisfied its

burden of proof and "that in the Court's discretion and in the light of the relative hardships between the parties injunctive relief should not issue."

1. In considering the application of Rule 56, Rules of Civil Procedure, which relates to summary judgment,[1] this court must, on appeal from such judgment, "bear in mind that the moving party has the burden of proof and that the nonmoving party has the benefit of that view of the evidence which is most favorable to him." Sauter v. Sauter, 244 Minn. 482, 484, 70 N. W. (2d) 351, 353. In passing upon a motion for summary judgment, the sole function of the trial court is to determine whether there is an issue of fact to be tried. In Bustad v. Bustad, 263 Minn. 238, 244, 116 N. W. (2d) 552, 556, we said:

"Under Rule 56.03 of Rules of Civil Procedure, the trial court may not order summary judgment unless the pleadings, depositions, affidavits, and other portions of the record show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Plaintiff has the benefit of whatever view of the evidence is the more favorable to him. We have held that the rule is intended to secure a just, speedy, and inexpensive disposition. It is not designed to afford a substitute for a trial where there are issues to be determined. Sauter v. Sauter, 244 Minn. 482, 70 N. W. (2d) 351; Abdallah, Inc. v. Martin, 242 Minn. 416, 65 N. W. (2d) 641; Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 186, 84 N. W. (2d) 593, 605."

---

[1] So far as applicable here, Rule 56.03 provides: "* * * Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law."

Rule 56.05 provides: "* * * When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

2. The general rule with which we are concerned is that one has a right to be secure in his contracts and to pursue his business or employment free from the interference of others except where such others act in pursuance of a superior or equal right. Roraback v. Motion Picture Machine Operators Union, 140 Minn. 481, 168 N. W. 766, 169 N. W. 529, 3 A. L. R. 1290; Johnson v. Gustafson, 201 Minn. 629, 277 N. W. 252; 30 Am. Jur., Interference, § 2; Jensen v. Lundorff, 258 Minn. 275, 103 N. W. (2d) 887; 19 Dunnell, Dig. (3 ed.) § 9637.

Liability for wrongful interference may be avoided by showing that defendant was justified by a lawful object which he had a right to assert. Defendant argues that the restrictive covenant in the contract was in itself justification for the writing of the letter which allegedly interfered with plaintiff's employment contract with KSTP. Defendant relies on those authorities which hold that in the protection of his own contractual rights a person may invade another's contractual rights where the former's interest is equal or superior to that of the latter and where such invasion is made with the honest purpose of fairly bettering one's own business, trade, or employment, and not for the primary object of destroying another's employment or business. Hendler v. Cuneo Eastern Press, Inc. (2 Cir.) 279 F. (2d) 181; National Life & Acc. Ins. Co. v. Wallace, 162 Okla. 174, 21 P. (2d) 492; Annotation, 26 A. L. R. (2d) 1227, 1264.

Restatement, Torts, § 773, expresses the rule as follows:

"One is privileged purposely to cause another not to perform a contract, or enter into or continue a business relation, with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction."

This court has considered the issue in Carnes v. St. Paul Union Stockyards Co. 164 Minn. 457, 462, 205 N. W. 630, 631, 206 N. W. 396, 10 Minn. L. Rev. 448. There, quoting Berry v. Donovan, 188 Mass. 353, 74 N. E. 603, 5 L. R. A. (N.S.) 899, 108 A. S. R. 499, 3 Ann. Cas. 738, we pointed out that the right of one to dispose of

his labor and to have the benefit of a lawful contract "is incident to the freedom of the individual" and that "[s]uch a right can lawfully be interfered with only by one who is acting in the exercise of an equal or superior right which comes in conflict with the other. An intentional interference with such a right, without lawful justification, is malicious in law, even if it is from good motives and without express malice."

We take it from these authorities that the right of defendant to interfere with plaintiff's attempt to better his employment may be justified where the interference is made in good faith in an attempt to assert a legally protected interest which might be endangered or destroyed and under circumstances where the contract gives the employer a right which is equal or superior to the right of the employee to better his condition.

3. In considering the record as it relates to the issue of justification for the action taken by defendant, it seems to us that the first inquiry should be whether or not the contract upon which defendant relies creates an interest which the law will protect. In this connection it should be immediately recognized that the agreement is one in partial restraint of trade since it limits the right of a party to work and to earn a livelihood. Such contracts are looked upon with disfavor, cautiously considered, and carefully scrutinized. Arthur Murray Dance Studios v. Witter, 62 Ohio L. Abs. 17, 105 N. E. (2d) 685.

4. It is true that this court has uniformly upheld covenants in a contract of employment designed to protect the employer against the deflection of trade or customers by the employee by means of the opportunity which the employment has given him; or to protect the legitimate interest of the business or professional man about to employ another under circumstances where the employee is given access to the employer's patronage, customers, clients, or trade secrets. Where the restraint is for a just and honest purpose, for the protection of a legitimate interest of the party in whose favor it is imposed, reasonable as between the parties, and not injurious to the public, the restraint has been held valid.[2]

---

[2] 16 Dunnell, Dig. (3 ed.) § 8436; National Benefit Co. v. Union Hospital Co. 45 Minn. 272, 47 N. W. 806, 11 L. R. A. 437; Nelson v. Johnson,

534

5. It is important to note that courts recognize a distinction between restrictive covenants as they relate to the ordinary commercial transaction involving business or property transfers and those which relate to employment contracts entered into by wage earners. A different measure of reasonableness is used. The test applied is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends.[3]

6. Restrictions which are broader than necessary to protect the employer's legitimate interest are generally held to be invalid, and the determination of the necessity for the restriction is dependent upon the nature and extent of the business, the nature and extent of the service of the employee, and other pertinent conditions. Arthur Murray Dance Studios v. Witter, *supra*; Briggs v. Butler, 140 Ohio St. 499, 45 N. E. (2d) 757. Restrictive covenants such as are found in the contract before us are proscribed by statute in some states.[4] This court

---

38 Minn. 255, 36 N. W. 868; Holliston v. Ernston, 124 Minn. 49, 144 N. W. 415; Gibbons v. Hansch, 185 Minn. 290, 240 N. W. 901, 82 A. L. R. 1027, 16 Minn. L. Rev. 712; Williams v. Thomson, 143 Minn. 454, 174 N. W. 307; Granger v. Craven, 159 Minn. 296, 199 N. W. 10, 52 A. L. R. 1356; The Menter Co. v. Brock, 147 Minn. 407, 180 N. W. 553, 20 A. L. R. 857; Standard Oil Co. v. Bertelsen, 186 Minn. 483, 243 N. W. 701. See, 41 Harv. L. Rev. 782; Annotation, 93 A. L. R. 121; 16 Minn. L. Rev. 106; Peoples Cleaning & Dyeing Co. Inc. v. Share, 168 Minn. 474, 210 N. W. 397; Annotation, 63 A. L. R. 316; Andrews v. Cosgriff, 175 Minn. 431, 221 N. W. 642; Shaleen v. Stratte, 188 Minn. 219, 246 N. W. 744; Metropolitan Ice Co. v. Ducas, 291 Mass. 403, 196 N. E. 856; Peterson v. Johnson Nut Co. 204 Minn. 300, 283 N. W. 561.

[3]35 Am. Jur., Master and Servant, § 99; 36 Am. Jur., Monopolies, Combinations, and Restraint of Trade, §§ 78 and 79. See, Combined Ins. Co. v. Bode, 247 Minn. 458, 77 N. W. (2d) 533.

[4]Business and Professions Code of California, § 16600; Alabama Code, Title 9, § 22; North Dakota Cent. Code, § 9-08-06.

has expressed its views as to such restrictive covenants in several decisions. Our approach has been influenced by a concern for the average individual employee who as a result of his unequal bargaining power may be found in oppressive circumstances. We said in The Menter Co. v. Brock, 147 Minn. 407, 411, 180 N. W. 553, 555, 20 A. L. R. 857, 859:

"* * * It may well be surmised that such a covenant finds its way into an employment contract not so much to protect the business as to needlessly fetter the employee, and prevent him from seeking to better his condition by securing employment with competing concerns. One who has nothing but his labor to sell, and is in urgent need of selling that, cannot well afford to raise any objection to any of the terms in the contract of employment offered him, so long as the wages are acceptable."

In Standard Oil Co. v. Bertelsen, 186 Minn. 483, 487, 243 N. W. 701, 703, it was said:

"* * * A man's right to labor in any occupation in which he is fit to engage is a valuable right, which should not be taken from him or limited by injunction except in a clear case showing the justice and necessity therefor."

See, also, Heflebower v. Sand (D. Minn.) 71 F. Supp. 607.

Authorities relating to the reasonableness of restrictive covenants as they concern the duration and place of the restriction are found in exhaustive annotations in 41 A. L. R. (2d) 15 and 43 A. L. R. (2d) 94. Authorities relating to the subject of liability for wrongfully procuring a breach of contract are fully gathered in Annotation, 26 A. L. R. (2d) 1227. A further discussion of the legal consensus to be gathered from the innumerable authorities on the subject is unnecessary. It is sufficient to say that the lawfulness of employment contracts containing such covenants depends upon numerous circumstances. It may be fairly said that the merits of a dispute arising from the provisions of a restrictive clause in an employment contract cannot always be determined by an examination of the contract itself. The validity of the contract in each case must be determined on its own facts and a

reasonable balance must be maintained between the interests of the employer and the employee.

Our decisions with reference to the validity of such restrictive covenants dealt with actions brought for injunctive relief.[5] We have not considered the precise question with reference to damages which might grow out of interference by one whose asserted "superior" right is based on a contract which is invalid or unenforceable. It is true that defendant here has a contract which on its face provides a ground for interference with plaintiff's employment elsewhere, but it is not established that the provision relied on creates an interest or property right which the law will protect. In determining whether it does so, the court must consider not only the nature of the business and character of the employment but all the circumstances of the case, including the situation of the parties, the necessity of the restriction for the protection of the employer's business, and the right of the employee to work and to earn a livelihood and better his status within the limits of his skill, talent, and continued productivity. Ridley v. Krout, 63 Wyo. 252, 180 P. (2d) 124.

Here the record does not establish as a matter of law that the restrictive covenant is enforceable, nor does it establish that the economic interest of the Storz Broadcasting Company would in any way be affected by the employment of plaintiff by another radio station. When the findings of the trial court with reference to the injunction action are viewed in the context of the entire record, it would appear that defendant did not wish to continue plaintiff in the capacity for which he was hired. He was "relegated * * * to an inferior position"; he was considered by his employer as "an ordinary, if not less than ordinary, 'radio personality,' " and was assigned to a job of

---

[5] Contracts similar to the one before us were considered in two injunction actions in relatively recent out-of-state decisions. In Wake Broadcasters, Inc. v. Crawford, 215 Ga. 862, 114 S. E. (2d) 26, the restrictive covenant was held to be unreasonable and unenforceable; and in Skyland Broadcasting Corp. v. Hamby, 75 Ohio L. Abs. 545, 2 Ohio O. (2d) 426, 141 N. E. (2d) 783, a restrictive covenant for an 8-month period was held to be valid as against an announcer and disc jockey specializing in "hillbilly" entertainment.

"taping an all-night program which did not carry advertising." It appears to be plaintiff's contention that defendant used the restrictive condition in the contract to prevent him from improving his earnings or establishing his career. The restrictive provision, if valid, would leave him in a situation where he would have to continue work for an additional 18-month period at a substantial decrease in salary. His alternative was to move himself and his family to another community, and even then his choice of where to go was limited. Nor does the record here indicate that defendant would benefit in any way by subjecting plaintiff to these onerous conditions. As we view the record, there are important fact questions which should be answered before it can be said that justification appears as a matter of law.

7-8. In discussing the term "lawful justification" we said in Carnes v. St. Paul Union Stockyards Co. 164 Minn. 457, 463, 205 N. W. 630, 632, 206 N. W. 396, 10 Minn. L. Rev. 448:

"The courts have not attempted to formulate a rule by which justification or lack of justification may be determined, but have said that in general the issue is largely one of fact for the jury, the standard being reasonable conduct under all the circumstances of the case. Huskie v. Griffin, 75 N. H. 345, 74 Atl. 595, 27 L. R. A. (N.S.) 966, 139 Am. St. 718; Berry v. Donovan, supra."

Other cases holding that whether or not there was justification is a fact question are Wolfson v. Northern States Management Co. 210 Minn. 504, 299 N. W. 676, and Royal Realty Co. v. Levin, 244 Minn. 288, 69 N. W. (2d) 667.[6] See, Annotations, 26 A. L. R. (2d) 1227, 1264, and 84 A. L. R. 43, 81. Moreover, we pointed out in the Carnes case that the burden of proving justification is upon the defendant. Other points raised in the appeal do not require discussion.

Reversed.

---

[6]In Royal Realty Co. v. Levin, 244 Minn. 288, 291, 69 N. W. (2d) 667, 671, we said, "According to the vast majority of decisions, even though the means employed in procuring the breach are in themselves lawful, where the inducement is without justification it may nevertheless be actionable."