BENFIELD, INC., a Delaware corporation; and Benfield Holdings, Inc., a Delaware corporation; Plaintiffs,

v.

David MOLINE, an individual; and Mark Hagen, an individual; Defendants and Third Party Plaintiffs,

and

John B. Collins Associates, Inc., Defendant,

v.

Rodman Fox, Third Party Defendant.

No. CIV.04–3513(MJD/JGL).

United States District Court, D. Minnesota.

Dec. 29, 2004.

Gregory James Stenmoe and Timothy Robert Thornton, Briggs & Morgan, Minneapolis, MN, and Wendy J. Wildung, Faegre & Benson, Minneapolis, MN, Counsel for Benfield, Inc., Benfield Holdings, Inc., and Rodman Fox.

Ansis V. Viksnins and Reuben A. Mjaanes, Lindquist & Vennum, PLLP, Minneapolis, MN, Counsel for David Moline, Mark Hagen, and John B. Collins Associates, Inc.

## MEMORANDUM OF LAW & ORDER

DAVIS, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Motion to Vacate Temporary Restraining Order by Defendants and Third Party Plaintiffs David Moline and Mark Hagen. [Docket No. 43] Plaintiffs Benfield, Inc., and Benfield Holdings, Inc., have filed a Motion for a Preliminary Injunction. [Docket No. 55] The Court heard oral argument on December 9, 2004.

### II. FACTUAL BACKGROUND

#### A. Pre-lawsuit Events

Plaintiffs Benfield, Inc. and Benfield Holdings, Inc. (collectively "Benfield"), are wholly owned subsidiaries of Benfield Group Limited. Plaintiffs broker reinsurance to insurance companies to assist them in managing their risk. Defendant David Moline was a senior vice president of Benfield, and Defendant Mark Hagen was a vice president of Benfield. Moline and Hagen worked with Benfield employees Janna Hepper and Beth Briner on a six-person brokerage team at Benfield.

During their employment with Benfield, Moline and Hagen were development brokers, primarily responsible for servicing and maintaining Benfield's existing clients. On July 29, 2004, Moline tendered his resignation, along with those of Hagen, Hepper, and Briner, to Benfield. The resignations were effective immediately. All four employees immediately began working for Defendant John B. Collins Associates, Inc. ("Collins"), a rival reinsurance intermediary. After July 29, at least one Benfield client who had worked with Moline and Hagen stated its intention to transfer its business to Collins.

Both Moline and Hagen were parties to certain employment contracts with Ben-

field, including restrictive covenants and confidentiality agreements. Moline's Confidentiality Agreement and Restrictive Covenant was executed on April 12, 2001. The restrictive covenant states that for one year following termination of his employment with Benfield, Moline cannot, directly or indirectly,

(a) except for the benefit of the Company, solicit business of, make sales calls on, make introductions to, or accept business from, in the United States, entities who were customers of the Company and with whom [Moline] had significant contact, or who were identified as prospective customers of the Company by [Moline] or at his direction, at any time within the one-year period after the End of Employment Date, for products or services the same or similar to those offered, sold, produced or under development by the Company, or dealt in by [Moline], during his employment with the Company;

(b) disparage the Company or the conduct of the Business by the Company; or

(c) solicit for any business endeavor any employee of the Company employed by the Company on the End of Employment.

Moline Confidentiality Agreement and Restrictive Covenant § 2. The Agreement also states that Moline may not "reveal, report, publish, transfer or otherwise disclose to any person or entity, or use" Benfield's confidential information for the benefit of himself or others. *Id.* § 1.

Hagen entered into a Confidentiality Agreement Restrictive Covenant with Benfield on June 12, 2003. The restrictive covenant states that for one year following termination of his employment with Benfield, Hagen cannot, directly or indirectly,

(a) except for the benefit of the Company, solicit business of, make sales calls on, make introductions to, accept business from, or provide services to, in the United States, entities who were customers of the Company and with whom [Hagen] had significant contact, or who were identified as prospective customers of the Company by [Hagen] or at [Hagen's] direction, at any time within the one-year period prior to the End of Employment Date, for products or services the same or similar to those offered, sold, produced or under development by the Company, or dealt in by [Hagen], during [Hagen's] employment with the Company; or

(b) disparage the Company or the conduct of the business by the Company; or

(c) (1) hire or attempt to hire any then-current employee of the Company, (2) hire or attempt to hire any former employee of the Company during their Cooling Off Period, or (3) otherwise solicit or cause any such current or former employee to leave the employ of the Company. "Cooling Off Period" means the sixty-one (61) day period after an employee's employment with the Company ends.

Hagen Confidentiality Agreement and Restrictive Covenant § 2.

Hagen's confidentiality agreement states that he will not "reveal, report, publish, transfer or otherwise disclose to any person or entity, or use" Benfield's confidential information. *Id.* § 1. The agreement defines confidential information to include Benfield's client lists. *Id.*

B. Procedural History

Plaintiffs filed a Complaint against Defendants on August 2, 2004, and a motion for a temporary restraining order on August 3. On August 10, the Court issued a Temporary Restraining Order temporarily

enjoining Moline and Hagen from soliciting Benfield employees or former Moline and Hagen clients, and from using Benfield's confidential information. [Docket No. 23] The Order did not set a specific length of time for enforcement.

On August 24, Plaintiffs filed an Amended Complaint, naming John B. Collins Associates, Inc., as an additional defendant, and asserting, among other things, a claim of tortious interference with contract against it on the grounds that Collins has intentionally procured breaches of the restrictive covenants signed by Moline and Hagen. On September 7, Defendants filed a Third–Party Complaint against Rodman Fox, Chief Executive Officer of Benfield's United States Operations, and counterclaims against Benfield.

Defendants now bring this motion seeking to vacate and dissolve the August 10 Temporary Restraining Order. Plaintiffs have brought a motion for a preliminary injunction.

### C. Current Status of Moline and Hagen's Former Clients

Since July 29, 2004, six former Moline and Hagen clients have transferred their business to Collins for some period of time: Georgia Casualty & Surety Company, Association Casualty Insurance Company, Insurance Corporation of Hannover ("ICH"), Wisconsin American Mutual Insurance Company, Founders Insurance Company, and Diversified Casualty Company, Ltd.

Both Association Casualty and Georgia Casualty initially switched their accounts to Collins on July 30, 2004, but ultimately decided to remain with Benfield. ICH initially appointed Collins its broker of record on August 3, 2004. After internal maneuvering within ICH and communications between ICH and Benfield, ICH decided to appoint Collins as its broker of record, but while Collins would service the accounts, Benfield would receive all brokerage revenue on the accounts through April 30, 2005. Both Benfield and Collins would then compete for ICH's work beginning in May 2005. ICH announced this arrangement on October 13, 2004. Within a week after Moline and Hagen left Benfield, Wisconsin American, Founders, and Diversified Casualty all transferred their accounts to Collins and decided to remain with Collins.

### III. DISCUSSION

#### A. Standard

The Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions and temporary restraining orders. *Dataphase Sys. Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (*en banc*). This Court must consider (1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits. *Id.* A party, that party's agents, and persons acting in concert with the party who receive notice of the order are all bound by a temporary restraining order or preliminary injunction. Fed. R.Civ.P. 65(d).

Defendants move to vacate the August 10 Temporary Restraining Order on the grounds that the reasonable time limit of the restrictions has passed, and the conditions on which the Temporary Restraining Order was based have now changed. Plaintiffs respond that the analysis of the *Dataphase* factors remains the same and that the restrictions of the Temporary Restraining Order must remain in place as a preliminary injunction.

C. Application of the *Dataphase* Factors to Breach of Contract Claims

1. Success on the Merits

As the Court explained in the Temporary Restraining Order, the Court determines that Plaintiffs have met their burden of demonstrating a likelihood of success on the merits of their claim that Defendants breached their valid restrictive covenants by soliciting former clients and Benfield employees.

■■■ In Minnesota, courts look upon non-competition agreements with disfavor and scrutinize them carefully because they are agreements in partial restraint of trade. *Nat'l Recruiters, Inc. v. Cashman,* 323 N.W.2d 736, 740 (Minn.1982).

> The test applied is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends.

*Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 134 N.W.2d 892, 899 (1965). A restriction limited to preventing solicitation of prior clients is reasonable to protect the employer's business. *Davies & Davies Agency, Inc. v. Davies,* 298 N.W.2d 127, 131 (Minn.1980). As explained in the Temporary Restraining Order, because Benfield does business on a national level, the geographic scope of the covenants are reasonable.

Defendants assert that the Court should vacate the Temporary Restraining Order because the reasonable length of time for the restrictions has already passed. Both Hagen's and Moline's contractual restrictions purport to last for one year after the end of employment.

■■■ Under Minnesota law, a restrictive covenant will only be enforced for the length of time that is "necessary for the protection of the business or good will of the employer." *Bennett v. Storz Broadcasting Co.,* 134 N.W.2d at 899. A particular time period is reasonable to the extent that it is necessary to "obliterate the identification between employer and employee in the minds of the employer's customers" or "the length of time necessary for an employee's replacement to obtain licenses and learn the fundamentals of the business." *Davies & Davies Agency, Inc. v. Davies,* 298 N.W.2d at 131. If the time period set out in the contract is unreasonably long, the court can modify the length of the restriction to a reasonable amount. *Id.* at 131 n. 1.

The Court concludes that the one-year restriction stated in the contracts is a reasonable time period. Moline worked at Benfield and its predecessor for over twenty years. Hagen worked there for over ten years. Through their work for Benfield, they developed close relationships with, and knowledge of, reinsurance clients. *Cf., Overholt Crop Ins. Serv. Co., Inc. v. Bredeson,* 437 N.W.2d 698, 704 (Minn.Ct.App.1989) (upholding two-year non-competition restriction as reasonable when, after five years of employment, insurance sales representative had established a good relationship with customers, had been trained on service technique, and was in close contact with customers).

The one-year period is reasonably necessary to ensure that Benfield has the opportunity to work with each client through its renewal period. During the renewal period, clients decide their reinsurance needs for the upcoming year. The renewal period typically lasts several months, and oc-

curs once a year. During the renewal period, senior management of the client have direct and prolonged interaction with individual brokers. The renewal periods for several former Moline and Hagen clients have not yet occurred. The year-long restriction will allow Benfield the opportunity to participate in each client's renewal period at least once before Moline and Hagen begin to compete. This intense period of interaction with each client will allow Benfield the opportunity to end the client's identification of Benfield with Moline and Hagen.

The Court also notes that the one-year period is not overly restrictive because it only limits Moline and Hagen with respect to their twelve former clients. Moline and Hagen are permitted to work with over one thousand other potential insurance clients. Moreover, they are currently gainfully employed, and have remained employed even with the Temporary Restraining Order in effect.

■ Plaintiffs again assert that Moline should not be permitted to provide services to former clients. The Court already considered and ruled on this issue, basing its interpretation of the contract language. While Hagen's contract clearly prohibits him from "provid[ing] services" to former clients, Moline's contract makes no mention of a prohibition on his ability to "provide services to" former clients. Thus, like the Temporary Restraining Order, the Preliminary Injunction will permit Moline to continue to provide services to his former clients.

Based on the evidence previously described in this Memorandum, including evidence that within one week of Moline and Hagen's departure from Benfield, half of their clients switched their accounts from Benfield to Collins, the Court concludes that Benfield has met its burden of showing a likelihood of success on the merits of its claim for breach of contract and that both the temporal and geographic scope of the restrictive covenants are reasonable.

2. Irreparable Harm

■ In the Temporary Restraining Order, the Court found that Plaintiffs were likely to suffer irreparable harm if the motion for a temporary restraining order was not granted because they were likely lose valuable business relationships and good will. *See, e.g., Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 452 (Minn.Ct.App.2001) (inferring irreparable harm from the breach of a restrictive covenant when the "former employee came into contact with the employer's customers in a way which obtains a personal hold on the good will of the business") (citation omitted).

The Court concludes that the threat of irreparable harm continues to exist if Moline and Hagen are not enjoined. Moline and Hagen had long careers at Benfield and its predecessor. They both developed close relationships with twelve clients and developed their business over the years. The business of those twelve former clients continues to be in flux. If Benfield is not permitted to go through the upcoming renewal periods for these accounts at least once before Moline and Hagen begin to compete, Benfield will be deprived of the opportunity to recapture the good will, reputation, and relationships that Moline and Hagen developed with these clients at Benfield's expense. These potential losses cannot be recouped through money damages.

Because reinsurance clients can switch brokers at any time, and because renewal periods for some of the twelve clients have not yet occurred, Plaintiffs are likely to suffer irreparable harm in the form of lost good will, reputation, and business rela-

tionships if the motion for a preliminary injunction is denied.

### 3. Balance of the Harms

■ As explained in the Temporary Restraining Order, the Court determines that the balance of the harms favors granting the preliminary injunction. While Plaintiffs would likely suffer irreparable harm if the injunction were not issued, if the preliminary injunction were issued, Moline and Hagen could continue to work for their new employer, Collins, as they have been doing for the last four months. Moline and Hagen are gainfully employed and there are numerous potential reinsurance clients with whom they can work while under the restrictions of the preliminary injunction.

### 4. Public Interest

■ As the Court explained in the Temporary Restraining Order, this factor does not weigh for or against granting the preliminary injunction because the public interest favors both enforcing contracts and promoting competition. *Guidant Sales Corp. v. George*, No. Civ. 01–1638, 2001 WL 1491317, at *8 (D.Minn. Nov. 19, 2001); *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 94 (Minn. 1979).

Having weighed the above factors, the Court determines that Plaintiffs have established that injunctive relief is warranted against Moline and Hagen.

### D. Application of the Dataphase Factors to the Tortious Interference with Contract Claim

### 1. Success on the Merits

■ Plaintiffs also seek a preliminary injunction against Collins on the basis of their tortious interference of contract claim against it. "Under Minnesota law, the elements of a claim for tortious interference with a contract are: '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages.'" *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 595 (8th Cir. 2001) (quoting *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn.1998)).

■ Plaintiffs' only proffered evidence that Collins intentionally procured a breach of the restrictive covenants is the fact that some of Moline and Hagen's former clients appointed Collins as their broker of record after Moline and Hagen joined Collins. This fact alone does not demonstrate that Collins "suborned Hagen and Moline to solicit Benfield clients." Memorandum in Support of Motion for Preliminary Injunction at 15. At this stage in this case, the Court concludes that there is insufficient evidence that Collins intentionally used Moline and Hagen to solicit Benfield clients in violation of their contracts. *Cf. Hagen v. Burmeister & Assocs., Inc.*, No. C8–98–864, 1999 WL 31130, at *3 (Minn.Ct.App. Jan.26, 1999) (unpublished) (holding that new employer is not liable for "an employee's breach of a valid noncompete agreement where there was no independent tortious conduct by the new employer" and declining to hold new employer liable when the record disclosed no ratification of the employee's alleged improper conduct).

The Court concludes that Plaintiffs are not likely to succeed on their claim against Collins for tortious interference with contract.

### 2. Irreparable Harm

■ Because Plaintiffs have "failed to demonstrate a probability of ultimate success, the possibility that [Plaintiffs] will suffer any harm from [the challenged ac-

tivity] is highly speculative." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1184 (8th Cir.1998). Additionally, Moline and Hagen are enjoined by this Order and, under Federal Rule of Civil Procedure 65(d), any party acting in concert with them is similarly enjoined. Thus, the possibility of irreparable harm stemming from breach of the restrictive covenants is adequately addressed without enjoining Collins, particularly when there is little evidence that Collins has committed any legal wrong.

### 3. Balance of the Harms

The Court concludes that the balance of the harms does not favor enjoining Collins. There is scant evidence that Collins has tortiously interfered with the restrictive covenants, so the denial of the injunction is not likely to result in harm to Benfield. On the other hand, if the injunction is granted, Collins will be prohibited from validly competing for clients who, but for the injunction, might have chosen Collins as their broker for reasons unrelated to Moline and Hagen. (For example, Wisconsin American represents that it moved its business to Collins because of the recommendation of its actuarial firm.) Additionally, an injunction would unnecessarily hinder former clients of Moline and Hagen from choosing the reinsurance provider of their choosing.

The Court determines that the balance of the harms weighs against enjoining Collins.

### 4. Public Interest

Finally, the Court concludes that the public interest weighs in favor of denying injunctive relief because public interest favors competition. *Guidant Sales Corp. v. George*, No. Civ. 01–1638, 2001 WL 1491317, at *8 (D.Minn. Nov. 19, 2001). This interest will be served by allowing Collins to compete with Benfield for reinsurance clients.

Having weighed the above factors, the Court determines that injunctive relief is not warranted against Collins.

Accordingly, based upon the files, records, and proceedings herein, IT IS HEREBY ORDERED:

1. Defendants' Motion to Vacate the Temporary Restraining Order [Docket No. 43] is DENIED.

2. Plaintiffs' Motion for a Preliminary Injunction [Docket No. 55] is GRANTED as follows:

   a) Defendant David Moline is enjoined from soliciting the business of, making sales calls on, making introductions to, or accepting the business of any of Benfield's customers with whom Moline had significant contact, or who were identified as prospective customers of Benfield by Moline or at Moline's direction. Moline is not enjoined from servicing the accounts of such customers who have already moved their accounts to Collins.

   b) Defendant Mark Hagen is enjoined from soliciting the business of, making sales calls on, making introductions to, accepting the business of, or providing services to any of Benfield's customers with whom Hagen had significant contact, or who were identified as prospective customers of Benfield by Hagen or at Hagen's direction, at any time within the one-year period prior to the End of Employment Date.

   c) Both Moline and Hagen are enjoined from soliciting Benfield's employees to engage in other business endeavors, such as working at Collins.

   d) Both Moline and Hagen are enjoined from using Benfield's confidential business information for

their own benefit or the benefit of a third-party, or in any other manner disclosing this information.

e) Defendants' agents and persons acting in concert with Defendants who receive notice of this Order are all bound by this Order.

3. This Preliminary Injunction Order supercedes and replaces the Court's August 10 Temporary Restraining Order [Docket No. 23].

4. This Order is effective upon the date recited below and shall remain in effect until this action is terminated, or until otherwise ordered by the Court, but in no event will it be in effect after July 29, 2005.

5. Within ten days from the date of this Order, Plaintiffs shall post a bond with the Clerk of this Court in the amount of one hundred thousand dollars ($100,000) to secure the Preliminary Injunction, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.