Steven B. WINTER and William D. Winter, Respondents,

v.

Lawrence G. LILES, individually and as partners of Savanna Development, Appellant,

Timothy E. Campion, et al., Defendants.

No. CX–83–1946.

Court of Appeals of Minnesota.

Aug. 28, 1984.

Jon S. Swierzewski, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, for respondent.

Ronald H. Groth, Thomson, Wahlfors, Moran & Groth, Minneapolis, for appellant.

Heard, considered and decided by SEDG-WICK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from a judgment for respondents Winter. The judgment was based on promissory notes executed to the Winters by appellant Lawrence Liles, and defendant Timothy Campion. The respondents' claim on their promissory notes was triggered by their withdrawal from a partnership involving themselves and appellant Liles and defendant Campion. The personal liability of Liles is based on a provision of the Partnership Liquidation Agreement signed by the four, at the time of the withdrawal. The partnership owned and operated the Savanna Golf Course and Supper Club in McGregor, Minnesota. The trial court held that Campion's sale of the golf course, without the knowledge or consent of Liles, imposed personal liability on Liles under the terms of the Agreement. We reverse.

## FACTS

The respondents, William and Steven Winter, formed a partnership with Timothy Campion in 1977 to own and operate the Savanna Golf Course and Supper Club [hereafter, the golf course] in McGregor, Minnesota. This partnership was formed, under the name of Savanna Development, by a written partnership agreement dated July 1, 1977. William Winter [hereafter, William] and Campion signed a purchase agreement for the golf course, on behalf of the partnership, on July 6, 1977. Although Campion alone signed the contract for deed on the property, it is agreed that he did so on behalf of the partnership, and that the interest in the golf course was partnership property. Steven managed the golf course, and William and Campion handled the bookkeeping and financial affairs.

In January 1978, appellant Lawrence Liles joined Savanna Development as the fourth partner.

Due to financial difficulties, a dispute arose in early 1979 between William Winter and Campion. As a result, it was agreed that the two Winters would sell their interests in the partnership to the partnership and withdraw. The terms of this withdrawal were set forth in a Partnership Liquidation Agreement, which was signed on May 30, 1979.

As a part of this agreement, the Winters received promissory notes for the payments owed them, which were to come due in three years. These notes, as well as the Partnership Liquidation Agreement, were signed by Campion and Liles as partners of Savanna Development. The notes, and an Addendum to the Partnership Agreement waiving certain requirements of that Agreement, were signed on June 1, 1979.

The Partnership Liquidation Agreement included a provision governing the personal liability of the remaining partners on the promissory notes. The provision reads as follows:

"5.) *Default Upon Payment of the Note* —Provided ownership of all or substantially all of the assets of the Partnership including, but not by way of limitation, the golf course and supper club currently operated by the Partnership, are not transferred, assigned or sold to the Surviving Partners, or either of them, or any partnership, trust or corporation in which the Surviving Partners, or either of

them, have an equity interest, the Retiring Partners' sole recourse in the event of default by the Partnership in payment of the Note shall be against the Partnership and its assets *and not against either of the Surviving Partners individually.*"

Paragraph 5 (emphasis added).

Timothy Campion and his wife, in unusual circumstances, had executed a quitclaim deed purportedly conveying an interest in the golf course to Savanna Golf, a new and separate partnership consisting of Campion and his father-in-law. This quitclaim deed bears a notarized date of May 30, 1979. There was testimony from Campion indicating that the actual date of this conveyance may have been in June of 1981, and the trial court so found.

The Winters were not aware of the purported transfer of the golf course to the new partnership. They do not claim that Liles had actual knowledge of that transfer, either, at the time of the Partnership Liquidation Agreement (May 30, 1979). They do argue, however, that due to his continuing involvement with the golf course, up to October of 1979, he did have a later knowledge of Savanna Golf and its claim of ownership.

Liles had a dispute with Campion in the fall of 1979, at which time he withdrew from the partnership. This withdrawal, however, was not formalized until November of 1981, when Campion and Liles executed an agreement for the latter's release on the same terms as the 1979 withdrawal of the Winters, and effective the same date.

The partnership has made no payments on the notes, which were due in May of 1982. The golf course was disposed of in the later bankruptcy of Savanna Golf. Campion's personal liability is not at issue here. At the time of trial, he had been convicted for fraud not directly related to these transactions. *See, State v. Campion,* 353 N.W.2d 573 (Minn.Ct.App.1984).

## ISSUE

Did the Partnership Liquidation Agreement make Liles personally liable on the promissory notes to the withdrawing partners in the event of a conveyance of the golf course without his knowledge or consent?

## ANALYSIS

The trial court found that the Agreement was unambiguous. It concluded that a "transfer" had occurred, under the terms of the Agreement, making Liles personally liable to the Winters. We disagree and hold that the Winter brothers are limited, at least as to appellant Liles, to proceeding against the Partnership and its assets, not against Liles personally.

The Partnership Agreement provided that the consent of all partners was required "to sell and convey the Property," which was defined as Savanna Golf Course and Supper Club. Appellant Liles argues that the quitclaim deed was void, because Campion lacked the required consent. Whatever the status of that transaction, however, through it and the subsequent bankruptcy of Savanna Golf, the Winters were deprived of the security for their repayment, which was the partnership interest in the golf course. Whether the Campion transfer was a valid conveyance or not, the issue presented is whether it made Liles personally liable on the promissory notes.

The trial court, in finding that the Liquidation Agreement unambiguously provided for Liles' personal liability following the Campion conveyance, read that Agreement without reference to the Partnership Agreement or to applicable statutes. The issue is whether the court erred in concluding that the Campion conveyance was a "transfer" triggering personal liability under paragraph 5, without referring to the Partnership Agreement, or to applicable statutory law, for the necessary conditions for a conveyance of partnership real property.

■ Where there is a reference in one instrument to the terms or provisions of a prior instrument, the prior instrument may be deemed a part of that second document to the extent of the reference to it. *In re Holtorf's Estate*, 224 Minn. 220, 28 N.W.2d 155 (1947). The Partnership Liquidation Agreement, however, does not explicitly refer to the Partnership Agreement. Although the Liquidation Agreement does note the formation of the partnership "for the purpose of owning and operating [the golf course]," thus implicitly referencing the Partnership Agreement, we do not rest our interpretation on this implication.

■ The Partnership Agreement provision requiring the consent of all partners for conveyance of the golf course, merely restates the statutory law in this regard. Minn.Stat. § 323.09 (1981) provides that, where title to real property is in the partnership name, the act of any partner in conveying such property does not bind the partnership unless it is within the partner's statutory authority, as defined in Minn. Stat. § 323.08 (1981). That authority is generally limited to acts which are "for apparently carrying on in the usual way the business of the partnership." Minn. Stat. § 323.08. A transfer of the golf course was not such an act, since the partnership's business was primarily the operation of the golf course. Thus, more specifically, the statute denies authority to acts of a partner "which would make it impossible to carry on the ordinary business of a partnership." Minn.Stat. § 323.08, subd. 3.

■ Although Savanna Development did not have title to the golf course property, and its interest as a contract-for-deed vendee was held in Campion's name, the same law is applicable, since this interest was purchased for the partnership, and held by Campion in trust for the benefit of the partnership. *Cyrus v. Cyrus*, 242 Minn. 180, 64 N.W.2d 538 (1954).

■ To determine the obligations imposed by a contract, the laws in force at the time of the making of the contract must be consulted. *Western States Utili-*

*ties Co. v. City of Waseca*, 242 Minn. 302, 65 N.W.2d 255 (1954). The Partnership Liquidation Agreement itself notes that the partnership is organized under the laws of Minnesota.

■ Although the Liquidation Agreement may be read without reference to the Partnership Agreement, since there is no explicit reference to it, statutory partnership law must be considered. Campion's transfer of the golf course to another partnership, which partnership included himself, without the knowledge or consent of the other partners, was a breach of his fiduciary duty, *see, Midland Nat. Bank of Minneapolis v. Perranoski*, 299 N.W.2d 404 (Minn.1980), and was ineffective to pass any interest in the property. Minn. Stat. §§ 323.08, .09. There is no indication in the Partnership Liquidation Agreement of an intent to depart from these statutory limitations on transfer of partnership real property. We are not reading such an intent into the case.

■ Although the golf course had been the subject of an attempted transfer, it is our duty to interpret the terms of the Partnership Liquidation Agreement, which is the instrument on which is based the claimed personal liability of Liles. Interpreting that agreement in light of applicable statutory law, we do not find the quitclaim deed signed only by Campion and his wife, without the knowledge or consent of Liles, to have been a "transfer" of the property.

Interpreting the Partnership Liquidation Agreement as we do in favor of Liles, it is unnecessary to address the issue of whether the trial court properly disregarded the notarized date on the quit claim deed, and ruled the actual date of the conveyance to have been June of 1981.

Respondents' argument that Liles acquired knowledge of the "transfer" of the golf course following June 1, 1979, and prior to his withdrawal in October, 1979, is not supported by the evidence. Campion's testimony, that he "guess[ed]" that Liles had an "option" to buy into the new part-

nership, Savanna Golf, after June 1, 1979, expresses only Campion's understanding. No conversations or negotiations with Liles are documented inferring Liles' knowledge of the ownership of the golf course. From the testimony, it is difficult to infer Liles' knowledge of Campion's transfer of the golf course, even if such knowledge could be sufficient to imply consent.

## DECISION

The quitclaim deed to the golf course, signed only by Campion and in clouded circumstances, was not a "transfer" of that property of the partnership within the terms of the Partnership Liquidation Agreement, so as to make Liles personally liable to the previous withdrawing partners.

Reversed.