**SATELLITE INDUSTRIES, INC., Appellant,**

v.

**David C. KEELING, Respondent.**

No. C9-86-821.

Court of Appeals of Minnesota.

Nov. 25, 1986.
Review Denied Jan. 21, 1987.

Heard, considered and decided by POPOVICH, C.J., and LANSING and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

This case involves the enforceability of an employee non-competition agreement and an agreement not to use or disclose confidential and proprietary information.

Satellite sued its former employee, David Keeling, for breach of an employment agreement and sought a temporary injunction. Keeling moved for summary judgment holding the agreement unenforceable. At the motion hearing the trial court misconstrued Satellite's request for temporary relief as a motion for summary judgment, apparently equated crossmotions for summary judgment to a waiver of trial, and decided the entire action, including damages, without a trial. Satellite appeals, requesting, among other relief, a trial on its breach of contract claim. We affirm the denial of a temporary injunction, reverse the remainder of the judgment, and remand.

## FACTS

Satellite Industries, Inc., designs, builds, and sells portable restrooms and related products. Its principal product is a portable restroom known as the "Tuffway" unit. Satellite also rents and services temporary sanitation facilities around the upper Midwest.

David C. Keeling began employment with Satellite as a sales representative on January 10, 1974. Keeling had been involved in sales for a number of years. His previous position was area sales manager for a cosmetic company.

Keeling was presented with the employment agreement at least a week after beginning his job. He read and signed it without discussion. The agreement included a non-competition agreement prohibiting Keeling from engaging in a competitive business in any state where Satellite does business either while employed by Satellite

Roger A. Johnson, LaVern Pritchard, Oppenheimer, Wolff & Donnelly, Minneapolis, for appellant.

Alan C. Eidsness, Glenn Olander-Quamme, Henson & Efron, P.A., Minneapolis, for respondent.

or for two years after his termination. Another provision required Keeling not to disclose any of Satellite's inventions, improvements, or discoveries. Satellite conducts business in all 50 states. All employees are required to sign this employment agreement.

After a few years as sales representative, Keeling was promoted to sales manager and eventually vice president of sales. His principal responsibility as vice president was supervisory, but he also maintained personal contact with a handful of Satellite's larger accounts.

Keeling also had access to significant confidential information. He had lists of current and prospective customers as well as knowledge of the cost structure of Satellite products and components. He was informed of company decisions regarding product evolution, product development, and contemplated design changes. While vice president, he participated in formal product development sessions and worked with Satellite's strategic plans for moving into new markets. During this time, Satellite developed a new hinge design for its "Tuffway" unit.

In the fall of 1984, Keeling met with C.W. Harbert, who owned a company in Texas that manufactured and rented portable restrooms. In May 1985 Keeling, Harbert, and Carroll LaBorde, the operator of a restroom service company, decided to establish a business manufacturing a new type of portable restroom. Harbert and LaBorde became the sole shareholders and directors of the new business, Synergy III Industries, Inc. Keeling is its president. They planned to have a portable restroom on the market by November 1985 and projected that four thousand units would be sold in the first year. Keeling negotiated his new job while still employed at Satellite.

On June 11, 1985, Keeling resigned from his position with Satellite. At Satellite's request, he remained on the payroll and was available for consultation through June 21, 1985. The next day, Keeling began work at Synergy III as its sole employee.

On July 5, 1985, Satellite sued Keeling for breach of the employment agreement. Keeling answered, admitted signing the employment agreement, admitted quitting his job to go into business with a venture competitive to Satellite, denied that the information he possessed was proprietary and confidential, and disputed the enforceability of the employment agreement.

On October 30, 1985, Satellite moved for a temporary injunction to prohibit Keeling from engaging in the competitive business and to prohibit him from disclosing any of Satellite's trade secrets. Specifically, Satellite sought to protect any information regarding the new "Tuffway" hinge design. Keeling moved for summary judgment, claiming the agreement was unenforceable because it was unreasonable and not supported by independent consideration. In response to Keeling's motion, Satellite stated that Satellite, not Keeling, was entitled to partial summary judgment on the employment agreement.

The trial court stated that the case was presented on "cross motions for summary judgment" and issued the following order:

1. That Plaintiff's motion for full and complete enforcement of the restrictive covenant, a copy of which is attached to the Complaint as Exhibit "A", is denied.

2. That the Court, finding the consideration provided to Defendant Keeling insufficient to support full enforcement, orders the subject restrictive covenant into effect as follows:

a. Defendant Keeling is enjoined and restrained from using any confidential business information or trade secrets actually obtained during the term of his employment at Satellite Industries for the production of income in his new venture Synergy III Industries, Inc. The Court makes a special finding that the Affidavit of P.R. Juaire dated November 22, 1985, does not amount to clear and convincing proof of the use of confidential business information or trade secrets of Plaintiff in the design and production

of Synergy III's quick assembly portable sanitation unit, a picture of which is attached to the Affidavit of P.R. Juaire as Exhibit "A."

b. To protect Satellite Industries' position in the market from an unfair competitive advantage by Defendant, Plaintiff is ordered to provide to the Court, solely for its in camera use, a list of customers to whom sales of the Satellite "Tuffway" portable sanitation unit were made during the period June 1st, 1984, through June 1st, 1985. Defendant Keeling, on behalf of Synergy III, is ordered to provide the Court, on or before June 30, 1986, a complete list of customers to whom sales have been made or with whom purchase agreements or invoices have been executed through the date June 21, 1986. This list will also be provided solely for the Court's in camera use.

c. The Court will compare the lists and, with respect to any customer listed by both parties, Defendant shall pay to Plaintiff Satellite Industries an amount equal to 50% of the gross sales price of all portable sanitation units sold for the period June 21, 1985, through June 21, 1987.

d. Compliance with this order shall constitute full and complete performance by Defendant of his obligations under the subject restrictive covenant. LET JUDGMENT BE ENTERED ACCORDINGLY.

### ISSUES

1. Did the trial court err in entering final judgment only partially enforcing the non-competition clause?

2. Did the trial court apply the correct standard in denying Satellite's motion for temporary and permanent injunctive relief?

### ANALYSIS

#### I

The issue of enforceability of the employment agreement was properly before the court for summary judgment. Neither party asserts remaining issues of material fact. Although the trial court did not specifically find the agreement enforceable, its partial enforcement implies this finding.

■ Courts carefully scrutinize employee non-competition agreements because they restrict a person's right to work and earn a livelihood. *Freeman v. Duluth Clinic, Ltd.*, 334 N.W.2d 626, 630 (Minn. 1983). A non-competition agreement signed after an oral employment agreement and after the employee has begun work can be sustained only if supported by independent consideration. *National Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn.1982).

■ The adequacy of consideration for such a restrictive covenant depends upon the facts of each case. *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 130 (Minn.1980). Continuation of employment alone can be used to uphold coercive agreements, but the agreement must be bargained for and provide the employee with real advantages. *Freeman*, 334 N.W.2d at 630.

■ Although Keeling signed the agreement after he began work, his career at Satellite lasted for 11 years and he steadily advanced through the company, eventually reaching the position of vice president of sales. Keeling received industry and product training and gained substantial knowledge about the design and marketing of portable restrooms. The trial court did not address consideration in the findings except to find that "the consideration provided [by Satellite] to * * * Keeling [was] insufficient to support full enforcement." However, consideration is not applied on a percentage basis. If consideration is found at all to support a contract, inquiry into its adequacy is forbidden. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 629 (Minn.1983). The record supports a finding of adequate independent consideration for the employment agreement.

■ Employee non-competition agreements must also be reasonable to be en-

forceable. Ascertaining whether a non-competition agreement is reasonable in scope calls for a balance of the equities between the employee and his former employer. As the court stated in *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 534, 134 N.W.2d 892, 899 (1965):

> The test applied is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the situation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends.

■ The court can, at its discretion, modify or "blue-pencil" an unreasonable agreement to reasonably protect the parties' interests. *Klick v. Crosstown State Bank of Ham Lake*, 372 N.W.2d 85, 88 (Minn.Ct. App.1985).

The trial court apparently found Satellite's and Keeling's agreement unreasonable, because the order substantially modifies it. The trial court ordered Keeling to supply a list of Synergy III's customers through the first year of Keeling's employment at Synergy III. Comparing that list with Satellite's customer list, the court then ordered Keeling to pay half of all gross receipts from Synergy III's sale of portable sanitation units to any Satellite customers.

■ However, the trial court's stated reason for modifying the agreement was insufficient consideration, not reasonableness. Notwithstanding the confusion between the issue of consideration and reasonableness, the trial court's order employs a permissible means to limit the scope of the agreement. Unreasonably broad non-competition agreements can be limited to include only the area where the employee performed duties; *see All Stainless, Inc. v. Colby*, 364 Mass. 773, 308 N.E.2d 481 (1974), the employer's business area; *Roth v. Gamble-Skogmo, Inc.*, 532 F.Supp. 1029

(D.Minn.1982), the employer's customers; *Matlock v. Data Processing Secur. Inc.*, 618 S.W.2d 327 (Tex.1981); or a reasonable geographical area. *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127 (Minn. 1980).

■ Although it is within the court's discretion to make this modification, we cannot determine whether its discretion was reasonably exercised. When a court blue-pencils a contract between the parties, it must provide an explanation of why the revision is warranted. The court provided no explanation. We are unable to determine whether the court considered protectable interests, what hardships the court sought to avoid, and how or why this particular method accomplishes its ends. The court's failure to state any reason for the modification frustrates our review and forestalls the parties' right to a meaningful appeal. We remand this issue to the trial court for further proceedings which should include, at a minimum, findings on the issue of reasonableness.

■ A trial is, however, necessary for determining damages. The trial court decided the issue of damages as part of the modification of the agreement. Damages do not flow from the breach of a non-competition agreement as a matter of course. They must be proved. *B & Y Metal Painting, Inc. v. Ball*, 279 N.W.2d 813, 816 (Minn.1979). The only issues briefed and argued at the motion hearing were the enforceability of the contract and the temporary injunction. The trial court's devised relief denies the parties the adversary process to arrive at damages based on actual sales. The court provides no basis for setting the penalty at 50 percent of the gross sales price. Satellite is entitled to an adversarial hearing on the issue of damages.

Satellite also moved the court for a temporary injunction to prohibit Keeling from employment or otherwise acting in the interests of Synergy III in the sale or manufacture of portable restrooms. The trial court did not rule on this request, but effectively denied it by ordering a compari-

son of customer lists between the two companies as the remedy for full protection of Satellite's position in the market.

We reverse a trial court's decision on whether or not to issue an injunction only if it appears there has been an abuse of discretion. *Cherne Industrial, Inc. v. Grounds & Associates*, 278 N.W.2d 81, 91 (Minn.1979). In ruling on a temporary injunction, a court generally considers the relationship between the parties, relative hardship, likelihood of success, the public interest and administrative burdens. *Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965). The party requesting the injunction must also show irreparable injury.

At the time the motion was before the court, Synergy III was not competing with Satellite, and therefore any claim of irreparable injury would have been speculative. Furthermore, Satellite executives indicated that lost profits as a result of competition from Synergy III could be calculated with a reasonable degree of certainty. For these reasons, we find the trial court did not abuse its discretion in denying Satellite's motion for a temporary injunction prohibiting Keeling from further employment with Synergy III.

## II

Satellite also moved the court for a temporary injunction to prohibit Keeling from using or disclosing any trade secrets or confidential information of Satellite. The trial court neither granted nor denied this motion, but permanently enjoined Keeling from using any confidential business information or trade secrets. Satellite contends the trial court's denial of a temporary injunction was error because it failed to apply the *Dahlberg* factors.

Satellite presented affidavits that Synergy III's demonstration model showed substantial similarity to Satellite's new design. The record indicates, however, that Satellite has not made a sufficient showing of irreparable injury to warrant reversal.

*Cherne* at 92. Satellite admitted they knew of no negative impact on its business since Keeling left and, again, the record indicates that any harm to Satellite can be reduced to money damages.

In considering Satellite's claim that Keeling used confidential business information or trade secrets in the design and production of Synergy III's quick-assembly portable sanitation unit, the court held that Satellite failed to produce *clear and convincing* evidence that Keeling appropriated the hinge design. The court cites no authority for the higher evidentiary standard; Keeling advances no authority for this standard, and we are not aware of any. Satellite has presented sufficient evidence to withstand a summary judgment motion. It is entitled to a trial to determine, under the proper evidentiary standard, whether Keeling and Synergy III appropriated the hinge design and, if so, what damages are due. We therefore reverse the trial court's entry of a final judgment on that issue.

## DECISION

We affirm the trial court's denial of a temporary injunction. We reverse the remainder of the judgment and remand it to the trial court for further findings on the reasonableness and modification of the noncompetition agreement, a trial on the issue of damages from the breach of the noncompetition agreement and a trial on the claim of appropriation of confidential business information and trade secrets in the design and production of Synergy III's quick-assemble portable sanitation unit.

Affirmed in part, reversed in part and remanded.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent for the following reasons:

1. The trial court erred in failing to grant partial summary judgment in favor of Satellite Industries on the issue of enforceability. The court denied full enforcement because it found the consideration provided Keeling was not fully sufficient.

Consideration regarding a restrictive covenant is sufficient or it is not. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622, 629 (Minn.1983). Because the trial court found minimum sufficiency of consideration, the entire covenant should be enforced.

2. The trial court properly issued a permanent injunction to restrain Keeling from using confidential business information or trade secrets obtained at Satellite Industries for producing income at Synergy III. Permanent equitable relief may be issued in the trial court's discretion. *See Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81, 91 (Minn.1979). The trial court did not abuse its discretion because Satellite Industries' trade secrets and confidential information are clearly protectable here and an additional hearing would not serve to alter that holding.