OVERHOLT CROP INSURANCE
SERVICE COMPANY, INC.,
Respondent,

v.

Scott L. BREDESON, Appellant.

No. C5-88-1761.

Court of Appeals of Minnesota.

March 28, 1989.

William J. Hempel, Jill Ruzicka, Head Hempel Seifert & Vander Weide, Minneapolis, for respondent.

Richard A. Emerick, Burnsville, for appellant.

Heard, considered and decided by RANDALL, P.J., and SHORT and SCHULTZ *, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from an order enjoining appellant Scott L. Bredeson from any further breach of a noncompetition agreement contained in the employment contract he executed with respondent Overholt Crop Insurance Company. We affirm.

## FACTS

Appellant Scott L. Bredeson executed an employment contract with respondent Overholt Crop Insurance Service Company on October 25, 1981. The employment contract contained a restrictive covenant that prohibited appellant from soliciting any business from customers he personally serviced while employed with respondent. The restriction covers the two-year period immediately following the termination of the employment relationship. The covenant also prohibited appellant from competing with respondent in any territory in which appellant worked.

When appellant started working for respondent, respondent sold only crop-hail insurance policies. In 1985, respondent began selling multi-peril crop insurance (MPCI). Appellant chose to sell the MPCI as well as the crop-hail insurance. Appellant received additional commissions for the MPCI he sold.

When appellant's contract commenced, he was assigned four counties to cover for respondent. Subsequently, appellant received an assignment for two more counties. Appellant earned commissions for insurance he sold in these additional counties.

Between 1985 and 1988, appellant executed addenda to the employment contract. The addenda dealt with commissions on both crop-hail insurance and MPCI. The addenda did not alter the terms of the noncompetition agreement.

The parties agree that from the time respondent started marketing MPCI, respondent employed independent agents as well as special representatives like appellant. These independent agents sold MPCI within areas serviced by respondent's employees, including the areas in which appellant worked.

Appellant resigned from respondent on February 13, 1988. Then, appellant starting contacting his former customers and offered to obtain competing MPCI and crop-hail coverage for them. Appellant admits to having signed new MPCI contracts with more than 50 of respondent's former customers. Appellant has also signed contracts with six or seven of respondent's crop-hail customers. These customers cancelled the coverage they had with respondent to sign new contracts with appellant.

According to one of respondent's officers, respondent lost over $100,000 in MPCI premiums in 1988 due to appellant's dealings with respondent's customers. With regard to MPCI insurance, federal regulations permit a commission to be awarded on only one transfer per year; thus, respondent has to now wait a minimum of one year before attempting to resell its former customers.

Following an evidentiary hearing, the trial court found that appellant breached his noncompetition agreement with respondent and issued a temporary injunction prohibiting appellant from any further breach pending trial. Respondent was required to maintain a $10,000 bond as security for any damage to appellant. Appellant did not claim that the amount of the bond was inadequate. This appeal challenges the propriety of the trial court's granting the temporary injunction.

## ISSUES

1. Did the trial court err by concluding that the "balance of the harm" favored issuing a temporary injunction enforcing the terms of the noncompetition agreement?

2. Did the trial court err by concluding that the "likelihood of success on the merits" favored issuing a temporary injunction enforcing the terms of the noncompetition agreement?

## ANALYSIS

A trial court's decision to grant a temporary injunction is within its discretion. *Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81, 91 (Minn. 1979). The trial court's decision will not be reversed on appeal unless, "based upon the whole record, it appears that there has been an abuse of such discretion." *Id.* at 91 (citation omitted); *see also Webb Publishing Co. v. Fosshage,* 426 N.W.2d 445, 448 (Minn. Ct.App.1988); *Satellite Industries, Inc. v. Keeling,* 396 N.W.2d 635, 641 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Jan. 21, 1987).

A trial court is not, however, entitled to exercise discretion without restraint. Before issuing a temporary injunction, the trial court must consider the following factors:

(1) The relationship between the parties before the dispute;

(2) The harm the plaintiff will suffer if relief is denied compared with the harm inflicted on the defendant if the injunction is issued;

(3) The likelihood that one party or the other will prevail on the merits;

(4) The public interest involved, if any;

(5) The administrative burdens involved in enforcing the relief requested.

*See Dahlberg Brothers, Inc. v. Ford Motor Co.,* 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965). Appellant challenges the trial court's conclusions on two of these factors: the balance of the harm and the likelihood respondent will succeed on the merits.

## I.

### Balance of Harm

The trial court found that if the injunction was not issued, respondent would be irreparably harmed and the harm to appellant would be minimal. The trial court's ruling is based on evidence obtained at a one-day evidentiary hearing.

A party seeking an injunction must first establish that his legal remedy is inadequate and that the injunction is necessary to prevent irreparable injury. *Cherne,* 278 N.W.2d at 92 (citations omitted). Irreparable harm may be inferred from the breach of a restrictive covenant in an employment contract. *Thermorama, Inc. v. Buckwold,* 267 Minn. 551, 552–53, 125 N.W.2d 844, 845 (1964). "[T]he inference may be rebutted by evidence that the former employee has no hold on the good will of the business or its clientele." *Webb Publishing,* 426 N.W.2d at 448.

At the hearing, appellant admitted that he signed new MPCI contracts with 50–55 of respondent's former customers. Appellant also admitted to signing crop-hail insurance contracts with six or seven of respondent's customers. Therefore, the inference that respondent has been irreparably harmed is supported by appellant's testimony. The evidence supports the trial court's conclusion that irreparable harm would result to respondent if appellant is not enjoined from further breach.

The record also supports the trial court's conclusion that the "balance of harm test" favors issuing the injunction. Appellant is permitted by the terms of his employment

contract to sell both MPCI and crop-hail insurance to anyone other than respondent's customers. Evidence introduced at the hearing indicates that respondent had less than 10 percent of the market share in the areas appellant worked. Consequently, the injunction merely prevents appellant from contacting less than 10 percent of the potential customers in the area in which he worked. We hold that, on balance, the loss of business respondent will suffer from appellant's continued breach outweighs any harm appellant will suffer by being prohibited from contacting less than 10 percent of the market. We affirm the trial court's ruling on this issue.

## II.

### *Likelihood of Success on the Merits*

Appellant contends that respondent is unlikely to prevail on the merits because: (a) the employment contract is invalid; (b) the restrictive covenant contained in the employment contract is invalid; and (c) respondent breached the contract first and appellant is released from the noncompetition agreement due to this breach.

### A. *Contract Validity*

■ Appellant first argues that the provisions of the employment contract are unenforceable because the contract is unconscionable. "A contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.'" *In re Estate of Hoffbeck*, 415 N.W.2d 447, 449 (Minn.Ct. App.1987), *pet. for rev. denied* (Minn. Jan. 28, 1988) (quoting *Hume v. United States*, 132 U.S. 406, 411, 10 S.Ct. 134, 136, 33 L.Ed. 393 (1889)). We hold that such a situation is not presented here.

Both parties obtained real and tangible benefits from the execution of this contract. Appellant received substantial income, insurance benefits, training in crop insurance marketing, underwriting, adjusting and servicing. Respondent received appellant's work product and the business appellant generated during the five years of his employment. The contract was not unconscionable from the standpoint of either party.

■ Appellant next argues that the entire contract is invalid because the consideration was "inadequate." "Consideration may consist of either a benefit accruing to a party or a detriment suffered by another party." *C & D Investments v. Beaudoin*, 364 N.W.2d 850, 853 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. June 14, 1985). Courts generally refuse to examine the adequacy of consideration when the parties have exchanged something of value. *Id.* at 853; *see also Satellite Industries*, 396 N.W.2d at 639.

Here, as noted, both parties received benefits from the employment relationship. Since both parties received something of value, we do not inquire into the adequacy of the consideration. We reject appellant's claim that the contract is invalid due to inadequate consideration.

### B. *Validity of the Restrictive Covenant*

Appellant next argues that the restrictive covenant is invalid because it is not supported by sufficient consideration and is unreasonable.

#### 1. Consideration

■ The Minnesota Supreme Court has ruled that the adequacy of the consideration for a noncompetition agreement in an employment contract depends upon the facts of each case. *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 130–31 (Minn.1980). *Davies* involved a noncompetition agreement signed *after* the employment relationship started. *Id.* at 130. Only noncompetition agreements entered into subsequent to the initial employment contract require independent consideration. *See National Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn.1982). Since appellant and respondent entered into this noncompetition agreement at the inception of the employment relationship, no independent consideration is necessary to support the agreement.

Appellant next contends that, with respect to the sale of MPCI, the restrictive covenant did not apply. Respondent claims that MPCI was covered by paragraph one of the original agreement which provided that appellant was employed for the sale of "policies of crop hail and *such other types of insurance policies* as the company may from time to time add to its lines." (emphasis added.) Respondent further claims that appellant executed addenda to the original agreement which covered MPCI and that appellant received independent consideration for marketing the MPCI in the form of additional compensation and territory.

We agree with respondent and the trial court and hold that the restrictive covenant applied to the sale of MPCI. Marketing the MPCI brought appellant additional income, territory, and experience. Economic and professional benefits are sufficient consideration to support subsequent noncompetition agreements. *See Davies,* 298 N.W.2d at 131. We hold that the additional advantages appellant obtained by marketing the MPCI sufficiently supported the noncompetition agreement's application to appellant's sale of MPCI.

### 2. Reasonableness

Appellant argues that the restrictive covenant is unreasonable because it is overbroad as to subject matter, geographic scope, and length (two years). With regard to the overbreadth problem, appellant claims that the term "insurance business" contained in the covenant is not defined and is not limited to insureds or customers. Appellant also contends that the geographical scope of the covenant includes more than just the territory assigned to appellant; he argues it includes any territory in which the appellant may have worked.

Appellant correctly points out that covenants not to compete are agreements in partial restraint of trade and are looked upon with disfavor. *See Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 533, 134 N.W.2d 892, 898 (1965). However, courts uphold such covenants when they are designed to protect the employer against the deflection of trade or customers by the employee. *Id.* at 533, 134 N.W.2d at 898.

Testimony at the hearing indicated that the parties understood the provision to prevent contact by former employees with existing policyholders. Such an understanding is consistent with the term "insurance business," and is limited to protect legitimate interests of respondent. We find the noncompetition agreement was not overbroad as to subject matter.

With regard to the reasonableness of the geographical scope of the restriction, the temporary injunction applies only to those counties in which appellant worked for respondent. Courts generally uphold geographic limitations when they are limited to areas necessary to protect the employer's interest. *See, e.g., Davies,* 298 N.W.2d at 131 (prohibition on competition with employer in employer's principal business area is reasonable); *Klick v. Crosstown State Bank of Ham Lake Inc.,* 372 N.W.2d 85, 88 (Minn.Ct.App.1985) (noncompetition clause which extends beyond employer's reasonable trade area is invalid). Since the geographical scope of this covenant is limited to the areas in which appellant actually worked for respondent, we find the restriction is not overbroad when examined in light of its purpose.

Appellant next contends that the length of temporary injunction, two years, is unreasonable and claims no evidence was presented to justify that limitation. The trial court concluded the two-year limitation served the legitimate business needs of respondent.

The test employed to determine the reasonableness of a temporal restriction examines the nature of the employee's work, the time necessary for the employer to train a new employee, and the time necessary for the customers to become familiar with the new employee. Note, *Employment Contracts: Covenants Not to Compete in Minnesota,* 9 Wm. Mitchell L.Rev. 388, 404 (1984). The record contains evidence that appellant received training from respondent on marketing and service techniques for both MPCI and crop-hail insurance.

The record supports the conclusion that appellant established a good relationship with respondent's customers during his five years with respondent. Furthermore, the nature of appellant's work for respondent required close contact with customers. Based on this evidence, we hold the trial court properly found a two-year restriction on direct competition was reasonable.

### C. *Breach by Respondent*

Appellant argues that respondent, not himself, breached the employment contract when respondent began employing independent agencies to market MPCI. Appellant contends that allowing independent agents to market MPCI within counties assigned to appellant breached a guarantee of territorial exclusivity provided by the contract. Respondent claims that appellant was never guaranteed territorial exclusivity by his employment contract. Appellant relies on a section of respondent's sales manual entitled "Rule on Territorial Rights" for his claim of territorial exclusivity.

Appellant argues that this rule modifies the contract pursuant to paragraph four of the agreement. Respondent claims that paragraph two of the employment agreement controls the employee's right to territories and provides that the company has discretion in this area. The trial court found that the rule neither adhered to the original contract nor established an independent agreement between appellant and respondent for territorial exclusivity.

Appellant cites no authority for his contention that the rule contained in respondent's sales manual is incorporated into his written contract of employment. In *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn.1983), the Minnesota Supreme Court held that specific termination procedures contained in a personnel handbook may become enforceable as part of the original employment contract if the statements meet the requirements for formation of a unilateral contract. *Id.* at 627. However, the court ruled that general statements of policy do not rise to the level of an offer for a unilateral contract. *Id.* at 626.

Appellant's situation is distinguishable from *Pine River*. *Pine River* involved the subsequent modification of an oral rather than a written employment contract. Here, appellant has a written employment contract specifically addressing territory, and the contract addresses territory by giving discretion to respondent. Also, *Pine River* involved specific termination provisions in an employee manual, not a general rule of operation in a sales manual as we have here.

The "Rule on Territorial Rights" is a general statement of policy regarding customer contact and collegial courtesy. It is unlike the specific termination procedures at issue in *Pine River*. The "territorial rule" set forth in respondent's sales manual neither meets the requirements set forth in *Pine River* nor establishes an independent contractual guarantee of territorial exclusivity.

Appellant also contends that the employment contract incorporated the rule by reference. A reference in one instrument to the terms or provisions of a prior instrument may incorporate the prior instrument to the extent of the reference. *Winter v. Liles*, 354 N.W.2d 70, 73 (Minn.Ct.App. 1984). The contract refers to rules and regulations established by the company and provides that the *employee* shall be bound by such rules. The language of this rule binds the employee, not respondent, the employer. Since the employment contract specifically discussed territory and rendered discretion to respondent, we affirm the trial court's ruling that respondent did not breach any guarantee of territorial exclusivity to appellant.

### DECISION

The trial court did not err by granting respondent a temporary injunction.

Affirmed.