*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2399**

Roger Ochsner,
Respondent,

vs.

Relco Unisystems Corporation,
Appellant,

and RELCO, LLC,
Plaintiff,

vs.

A. Kent Keller, et al.,
Defendants.

**Filed October 6, 2014
Reversed and remanded
Kirk, Judge**

Kandiyohi County District Court
File No. 34-CV-11-396

Michael Feichtinger, Quinlivan & Hughes, St. Cloud, Minnesota; and William R. Skolnick, Andrew H. Bardwell, Skolnick & Shiff, P.A., Minneapolis, Minnesota (for respondent)

Dean A. LeDoux, Meghann F. Kantke, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

Appellant-employer Relco Unisystems Corporation challenges the district court's grant of summary judgment to respondent-employee Roger Ochsner on his claim for breach of a shareholder-redemption agreement, arguing that the agreement contained an offset provision that allowed plaintiff RELCO, LLC, to withhold payment for Ochsner's stock in the event that he breached his noncompete or confidentiality agreements. We conclude that Ochsner effectively assigned the noncompete and confidentiality agreements to RELCO, thereby allowing it to apply the offset provision. We reverse the grant of summary judgment and remand to the district court to enter summary judgment in favor of Relco Unisystems consistent with this opinion.

## FACTS

In 2001, Relco Unisystems hired Ochsner as a sales engineer. Relco Unisystems was engaged in manufacturing processing systems and equipment for dairy, food, and pharmaceutical companies. During his employment, Ochsner entered into a series of contracts with Relco Unisystems. In 2001, Ochsner signed a confidentiality and noncompete agreement. In 2005, he signed a five-year employment agreement that incorporated the 2001 agreements and gave him the option to purchase company stock. Ochsner purchased 1,499 shares of company stock. In 2007, Relco Unisystems converted its business from a corporation to a limited-liability company, under the name of RELCO.

2

As a result of the corporate restructuring, Ochsner signed two contracts in September 2007 in exchange for continued employment with RELCO. The first contract changed any reference of Relco Unisystems in Ochsner's employment agreement to RELCO. The second contract stated that as of September 2007, Relco Unisystems and RELCO were to be considered the same entity in the noncompete and confidentiality agreements. That same month, Ochsner's employment transferred from Relco Unisystems to RELCO, but his job duties, pay, and benefits remained unchanged.

After Ochsner voluntarily left his employment with RELCO in January 2010 to work for Custom Fabricating and Repair, Inc. (CFR), he entered into a stock-redemption agreement with Relco Unisystems to relinquish his outstanding shares of its stock in exchange for $89,165.13 in two installment payments. The agreement contained a promissory note that stated if Ochsner breached any of the terms and provisions of the 2001 noncompete and confidentiality agreements, Relco Unisystems could offset the remaining balance it owed Ochsner for his stock. Relco Unisystems paid Ochsner the first installment, but refused to pay the second installment, plus interest, of $46,332.65 because it alleged that he had breached the noncompete agreement as a result of his employment at CFR and a subsidiary company.

In May 2011, RELCO filed suit against a number of former RELCO employees, including Ochsner. RELCO's claims against Ochsner included breach of contract, as it alleged that he had violated the noncompete and confidentiality clauses of his employment agreement. Prior to the jury trial, Ochsner filed a complaint alleging that Relco Unisystems breached the stock-redemption agreement when it failed to pay the

3

second installment payment for his stock. In December 2012, Ochsner moved for summary judgment. RELCO opposed the motion, arguing that Ochsner's employment agreement and its noncompete obligations had been assigned to RELCO, and the offset provision allowed it to withhold payment for Ochsner's stock because he had misappropriated RELCO's confidential information during his employment with CFR.

The district court granted Ochsner's motion for summary judgment and entered judgment against Relco Unisystems in the amount of $46,332.65. The district court reasoned that Relco Unisystems and RELCO were two separate and distinct entities, and RELCO did not appear by word or reference in the promissory note or stock-redemption agreement. Hence, the offset provision of the promissory note did not apply to RELCO. The district court also noted that RELCO's claim failed because Relco Unisystems did not allege any damages from Ochsner's breach.

Following a nine-day trial in October 2013, a jury found Ochsner, another former RELCO employee, CFR, and CFR's subsidiary jointly and severally liable to RELCO for $22,780,000. The jury found Ochsner personally liable to RELCO for $2,000,000 for breach of contract. In February 2014, Ochsner filed for Chapter 11 bankruptcy.

This appeal follows.

## D E C I S I O N

Relco Unisystems challenges the district court's entry of summary judgment in Ochsner's favor, arguing that the offset provision of the stock-redemption agreement unambiguously applies to RELCO.

4

On appeal from summary judgment, this court reviews whether there are any genuine issues of material fact and if the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002) (citations omitted). "Absent ambiguity, the interpretation of a contract is a question of law." *Roemhildt v. Kristall Dev., Inc.*, 798 N.W.2d 371, 373 (Minn. App. 2011), *review denied* (Minn. July 19, 2011). This court reviews questions of law de novo. *Boldt v. Roth*, 618 N.W.2d 393, 396 (Minn. 2000). A contract is ambiguous if it is reasonably susceptible to more than one meaning. *Collins Truck Lines, Inc. v. Metro. Waste Control Comm'n*, 274 N.W.2d 123, 126 (Minn. 1979). If a contract is ambiguous, its interpretation is a question of fact. *City of Virginia v. Northland Office Props. Ltd. P'ship*, 465 N.W.2d 424, 427 (Minn. App. 1991), *review denied* (Minn. Apr. 18, 1991). "[L]anguage found in a contract is to be given its plain and ordinary meaning." *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 67 (Minn. 1979). "The cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997).

Prior to 2007, the confidentiality and noncompete agreements Ochsner signed as a condition of employment with Relco Unisystems were in full force and effect. *See Overholt Crop Ins. Serv. Co. v. Bredeson*, 437 N.W.2d 698, 702 (Minn. App. 1989) ("Since [employee] and [employer] entered into this noncompetition agreement at the inception of the employment relationship, no independent consideration is necessary to support the agreement."). In September 2007, as a requirement of transferring his

employment to RELCO, Ochsner agreed to two key changes in his employment agreement: (1) RELCO became his employer; and (2) RELCO and Relco Unisystems would be considered the same entity in the confidentiality and noncompete agreements. Thus, Ochsner effectively assigned to RELCO, his employer, the right to sue for any breach of these agreements. *See Minn. Mut. Life Ins. Co. v. Anderson*, 504 N.W.2d 284, 286 (Minn. App. 1993) ("Under Minnesota law no particular form of words is required for an assignment, but the assignor must manifest an intent to transfer and must not retain any control or any power of revocation."), *review denied* (Minn. Oct. 19, 1993).

We disagree with the district court's conclusion that RELCO and Relco Unisystems were separate and distinct entities as contemplated in the stock-redemption agreement and promissory note. The record demonstrates that the transfer of assets and operations from Relco Unisystems to RELCO amounted to nothing more than a corporate name change, and the transfer did not result in any change to the nature of Ochsner's employment. Restrictive covenants can be assignable. *See, e.g.*, *Saliterman v. Finney*, 361 N.W.2d 175, 177-78 (Minn. App. 1985).

Although the language of the promissory note and stock-redemption agreement never mentioned RELCO, it is clear that the offset provision applied to RELCO. There is no dispute that when Ochsner and Relco Unisystems entered into the stock-redemption agreement in 2010, Relco Unisystems had ceased all business activities and transferred its assets to RELCO three years earlier. Under the district court's interpretation of these agreements, it would be impossible for Relco Unisystems under any circumstances to establish a breach by Ochsner because it could not prove damages. But such an

6

interpretation renders the offset provision nugatory. "Because of the presumption that the parties intended the language used to have effect, [appellate courts] will attempt to avoid an interpretation of the contract that would render a provision meaningless." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990). We conclude as a matter of law that the offset provision applies to RELCO.

In light of our opinion and the jury's finding that Ochsner breached the confidentiality agreements of his employment agreement with RELCO, we reverse the district court's grant of summary judgment to Ochsner, and remand to the district court so it may apply the offset of $46,332.65 in accordance with this opinion and apply the amended judgment against Ochsner.

**Reversed and remanded.**