SAFETY CENTER, INC., Appellant,

v.

Joan Marie STIER, et al., Respondents.

A17-0360

Court of Appeals of Minnesota.

Filed November 6, 2017

James T. Smith, Craig D. Greenberg, Huffman, Usem, Crawford & Greenberg, P.A., Minneapolis, Minnesota (for appellant)

Mark W. Delehanty, Klampe, Delehanty & Pasternak, LLC, Rochester, Minnesota (for respondents)

Considered and decided by Connolly, Presiding Judge; Ross, Judge; and Rodenberg, Judge.

## OPINION

RODENBERG, Judge

Appellant Safety Center, Inc., sued respondents for respondent Joan Stier's breach of a noncompete agreement, among other related claims. The noncompete agreement, by its terms and if enforceable, purported to limit Stier's ability to "provide services to [appellant's] clients in any competitive capacity for a period of one year commencing from the termination of employment," together with other related one-year limitations on her work activity.

The parties stipulated to a bifurcated trial to isolate and resolve the issue of whether the noncompete agreement is enforceable. The district court found as a fact that the noncompete agreement is not ancillary to the employment agreement between the parties and is not supported by independent consideration. It concluded that the noncompete agreement is invalid and unenforceable. Appellant argues that the district court erred by finding that there had been an offer and acceptance of an employment agreement before the noncompete agreement was presented to Stier. Because the district court did not clearly err by inferring that there was an offer and acceptance, unaccompanied by any reference to a noncompete agreement, and because the district court did not abuse its discretion by concluding the noncompete

agreement was not ancillary to the employment agreement, we affirm.

## FACTS

This case concerns the enforceability of a Non-Disclosure/Confidentiality and Non-Compete Agreement (the noncompete agreement) signed by appellant's former employee, Stier. Appellant is a treatment center for special-needs sex offenders, owned by Executive Director Dean Devries. Stier applied for work with appellant on May 19, 2003, and interviewed that day with Devries for a part-time therapist position. Neither Stier nor Devries could confirm in their trial testimony whether Stier was offered a job that day or whether they discussed the noncompete agreement during the interview. The next day, Devries mailed Stier a letter (the May 20 letter). The first line of the letter identified its purpose "to confirm [Stier's] acceptance of the position [appellant] offered [her]." The May 20 letter asked Stier to attend a training presentation and offered to "pay [her] for the time." It also laid out the terms of employment, indicating Stier's hourly wage, her at-will status, and that her first day of work would be on May 27, 2003. The May 20 letter made no mention of a noncompete agreement.

Stier arrived to work on May 27 as directed by the May 20 letter. That day, she filled out new-hire paperwork. She was also presented with a noncompete agreement. Stier signed it. Stier remained employed by appellant for many years and eventually became program director. In late 2014, Stier established another treatment program for special-needs sex offenders and incorporated respondent All New Directions. She resigned from appellant's employ in early 2015. Appellant sued respondents claiming, among other things, that Stier's actions violated the noncompete agreement.

The parties isolated the issue of whether the noncompete agreement between Stier and appellant is enforceable by bifurcating the trial. The district court determined after trial on the issue so isolated that the noncompete agreement is not ancillary to the initial employment agreement, based on its finding that appellant and Stier had entered into an employment agreement before Stier was informed of or presented with the noncompete agreement. The district court also found that no independent consideration supports Stier's execution of the noncompete agreement, and concluded that the agreement is not enforceable. Appellant moved for posttrial relief, seeking amended findings. The district court denied the motion. This appeal followed.

## ISSUES

I. Must a noncompete agreement be ancillary to an employment agreement or accompanied by independent consideration to be enforceable?

II. Did the district court clearly err in finding that an employment agreement was formed before Stier was informed of or presented with the noncompete agreement?

## ANALYSIS

### I. A noncompete agreement must be ancillary to an employment agreement or accompanied by independent consideration to be enforceable.

The Minnesota Supreme Court has reasoned that noncompete agreements are to be "disfavored" by the courts because they restrain trade. *Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn. 1982). Noncompete agreements may be permitted if they are "bargained for" by the parties *and* if there exists independent consideration beyond the employment opportunity provided to the employee. *Id.*

But, when an employer and employee enter into a noncompete agreement "at the inception of the employment relationship," independent consideration is not required for a noncompete agreement to be enforceable. *Overholt Crop. Ins. Serv. Co. v. Bredeson*, 437 N.W.2d 698, 702 (Minn. App. 1989). This rule takes into account the disparity in bargaining power between employers and employees. *Nat'l Recruiters*, 323 N.W.2d at 741. Without this rule, employers might take "undue advantage" of this disparity by presenting a prospective employee with a noncompete agreement only after she has accepted employment. *Id.*

■ Where a noncompete agreement is not ancillary to an employment agreement, independent consideration must be provided to the employee to render the agreement valid and enforceable.

**II. The record supports the district court's finding that the employment agreement between appellant and Stier was made before Stier was informed of or presented with the noncompete agreement.**

■ Appellant's primary argument on appeal is that the district court erred in finding that appellant and Stier had formed an employment agreement before Stier was given notice of and presented with the noncompete agreement. Appellant also argues that the district court incorrectly used this finding to conclude that the noncompete agreement was not ancillary to Stier's employment.

■ We review the district court's factual findings for clear error, examining the record for "reasonable evidence" that would "support the court's findings." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotations omitted). "And when determining whether a finding of fact is clearly erroneous, we

view the evidence in the light most favorable to the verdict. To conclude that findings of fact are clearly erroneous we must be left with the definite and firm conviction that a mistake has been made." *Id.* (quotations and citations omitted). "When reviewing mixed questions of law and fact, we correct erroneous applications of law, but accord the district court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard." *In re Estate of Sullivan*, 868 N.W.2d 750, 754 (Minn. App. 2015) (quotation omitted).

The district court found as a fact that there had been an offer of employment and an acceptance before Devries sent the May 20 letter. It based this finding on the language in the May 20 letter, which stated: "This is to confirm your acceptance of the position we offered you."

Appellant argues that the May 20 letter was not sufficient to support the district court's finding of fact because the trial testimony does not support the finding and, in one instance, conflicts with the finding. At trial, neither Stier nor Devries could recall whether there was an offer and acceptance before Devries sent Stier the May 20 letter. Stier testified that she believed the first time she learned that appellant had offered her a position was when she received the letter in the mail.

It is true that there is no testimony in the record that directly supports the district court's finding that there was an employment agreement in place between the parties before Devries sent the May 20 letter. But the lack of direct trial testimony does not render the district court's findings clearly erroneous. First, the district court did not find testimony regarding a different interpretation of the May 20 letter to be credible. During the post-trial motion hearing, the district court

stated, "[T]he May 20th letter is unambiguous.... I don't find the testimony regarding any other explanation of what the letter was trying to communicate to be credible. I think the letter speaks for itself." We must give "due regard" to the "opportunity of the [district] court to judge the credibility of a witness." Minn. R. Civ. P. 52.01. The record supports the district court's finding that the May 20 letter meant what it plainly stated. Second, Stier's testimony that she thought she had first learned of appellant's offering her a position when she received the May 20 letter conflicts with the district court's finding of the existence of an employment agreement on May 19. Careful review of the trial record makes evident that Stier's testimony, given 13 years after the inception of employment, was to the general effect that she had no clear recollection of the details. The district court gave more weight to the May 20 letter than to Stier's 13-year-old recollection, or lack thereof.

"That the record might support findings other than those made by the trial court does not show that the court's findings are defective." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000). Viewing the evidence in "the light most favorable to the verdict," as we must, *Rasmussen*, 832 N.W.2d at 797, the district court's finding that there was an employment agreement in place between Stier and appellant before the May 20 letter is reasonably supported by the record. Accordingly, we hold that the district court did not clearly err by inferring the existence of an employment agreement between Stier and appellant from the May 20 letter explicitly confirming the offer and acceptance of employment.

Based on its factual findings that an employment agreement was formed before Devries wrote the May 20 letter, and that

Stier was not presented with or notified of the noncompete agreement until May 27, the district court did not abuse its discretion when it concluded that the noncompete agreement was not ancillary to the parties' employment agreement. We have previously determined that, where the parties to an oral employment agreement reached the agreement before the employee was informed of a noncompete agreement, the noncompete agreement is not ancillary and requires independent consideration. *Sanborn Mfg. Co. v. Currie*, 500 N.W.2d 161,164 (Minn. App. 1993). Because the district court found here that the employment agreement was formed days before Stier was presented with or notified of the noncompete agreement on May 27, the noncompete agreement was not signed at the "inception" of the employment agreement and cannot be considered ancillary. *Cf. Overholt*, 437 N.W.2d at 702.

The district court did not abuse its discretion in determining that the noncompete agreement was not ancillary to the employment agreement. Because appellant makes no argument that there was independent consideration provided to Stier in return for signing the noncompete agreement, the district court correctly concluded that the noncompete agreement was not enforceable.

## DECISION

The district court's finding that appellant and Stier entered into an employment agreement before Stier was presented with or informed of the noncompete agreement is supported by the record and is not clearly erroneous. The district court did not abuse its discretion in concluding that, because Stier was not presented with or given notice of the noncompete agreement at the time the employment agreement was established, the noncompete agree-

ment was not ancillary to the employment agreement. We affirm.

**Affirmed.**